UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JONATHAN GIBBS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:26-cv-00030-ZMB |
| | ) | |
| THE HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

THOMPSON COBURN LLP
Jeffrey R. Fink, #44963(MO)
Matthew D. Guletz, #57410(MO)
One U.S. Bank Plaza, Suite 2700
St. Louis, Missouri 63101
(314) 552-6000 (telephone)
(314) 552-7000 (facsimile)
jfink@thompsoncoburn.com
mguletz@thompsoncoburn.com

Attorneys for Defendant MOHELA

**Table of Contents**


**Page**

Introduction ........ 1

Factual Background ........ 2

Argument ........ 4

1. Plaintiffs' claims fail because they never had any rights under the vacated and void ab initio SAVE Rule. ........ 4

2. Plaintiffs' contract claims (Count 1-3) fail because: (a) MOHELA does not owe any obligations to Plaintiffs under the Servicing Contracts or the Notes; and (b) the ED's sovereign immunity bars Plaintiffs' claims under the Notes. ........ 6

    a. Plaintiffs have no claim under the Servicing Contracts. ........ 7

    b. MOHELA is not a party to the Notes and has no obligations under the Notes. ........ 9

    c. The ED's sovereign immunity bars Plaintiffs' claims against MOHELA under the Notes. ........ 10

3. Plaintiffs' statutory claims (Counts 4-10) fail because the Florida, New York, and Washington statutes are inapplicable and the claims are barred by state sovereign immunity. ........ 11

    a. The FDUTPA (Counts 4-5) does not apply to governmental entities such as MOHELA and does not apply to loan servicing and collection activity. ........ 12

    b. The NYGBL (Counts 6-7) does not apply to governmental entities such as MOHELA. ........ 13

    c. Governmental entities such as MOHELA are not subject to liability under the WCPA (Counts 8-10). ........ 14

    d. State sovereign immunity bars Plaintiffs' claims under the FDUTPA, the NYGBL, and the WCPA (Counts 4-10). ........ 16

4. Plaintiffs' claims are improper attempts to enforce the HEA. ........ 18

Conclusion ........ 20

# Table of Authorities

**Page(s)**

**Cases**

*Astra USA, Inc. v. Santa Clara Cnty., Cal.*, 563 U.S. 110 (2011) .......... 19-20

*Benjamin v. CitiMortgage, Inc.*, No. 12-62291-CIV, 2013 WL 1891284 (S.D. Fla. May 6, 2013) .......... 13

*Biden v. Nebraska*, 600 U.S. 488 (2023) .......... *passim*

*Bottorff-Arey v. Truman State Univ.*, 633 S.W.3d 508 (Mo. Ct. App. 2021) .......... 11, 18

*Church v. Missouri*, 913 F.3d 736 (8th Cir. 2019) .......... 16

*City of Harrisonville v. Bd. of Trustees of Mo Petroleum Storage Tank Ins. Fund*, 655 S.W.3d 770 (Mo. 2022) .......... 17

*Curcio v. State Dep't of Lottery*, 164 So. 3d 750 (Fla. Dist. Ct. App. 2015) .......... 12

*DBI Servs. LLC v. Shorter*, No. 4:16-CV-127MW/CAS, 2017 WL 11629340 (N.D. Fla. May 1, 2017) .......... 12

*Downing v. New York City Hous. Auth.*, 117 N.Y.S.3d 464 (N.Y. Sup. Ct. 2019) .......... 13

*Dykes v. Missouri Higher Educ. Loan Auth.*, No. 4:21-CV-00083-RWS, 2021 WL 3206691 (E.D. Mo. July 29, 2021) .......... 12, 14, 16-17

*Dykes v. MOHELA*, Circuit Court of Pinellas County, Florida, Case No. 19-0007394-CI (2020) .......... 13

*Edelman v. United States Gov't*, No. 18-CV-2143(JS)(AKT), 2020 WL 7123175 (E.D.N.Y. Dec. 4, 2020) .......... 8

*Franchise Tax Bd. of California v. Hyatt*, 578 U.S. 171 (2016) .......... 11-12, 14, 16

*Gary v. Spires*, 473 F. Supp. 878 (D.S.C. 1979) .......... 5

*Geft Outdoor LLC v. Consol. City of Indianapolis & Cnty. of Marion, Indiana*, 187 F. Supp. 3d 1002 (S.D. Ind. 2016) .......... 5

*Genao v. CitiMortgage, Inc.*, No. 16-23111-CIV, 2017 WL 10775439 (S.D. Fla. Feb. 10, 2017) .......... 13

*Gibbs v. SLM Corp.*, 336 F. Supp. 2d 1 (D. Mass. 2004), aff'd, No. 05-1057, 2005 WL 5493113 (1st Cir. Aug. 23, 2005) .......... 19

*Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314 (2002) ....14

*Haberman v. Washington Pub. Power Supply Sys.*, 744 P.2d 1032 (Wash. 1987), *amended*, 750 P.2d 254 (Wash. 1988) ....15

*Harmon v. Preferred Fam. Healthcare, Inc.*, 125 F.4th 874 (8th Cir. 2025) ....16

*Hyland v. Navient Corp.*, No. 18CV9031(DLC), 2019 WL 2918238 (S.D.N.Y. July 8, 2019).... 7-8

*Jean-Jacques v. Shellpoint Mortg. Servicing*, No. 20-61813-CV, 2021 WL 8894470 (S.D. Fla. Feb. 3, 2021)....13

*Keenan v. Allan*, 889 F. Supp. 1320 (E.D. Wash. 1995) ....15

*Kuku v. Capella Univ.*, No. 23-CV-3591, 2025 WL 3089558 (D. Minn. Nov. 5, 2025) ....18

*Labickas v. Arkansas State Univ.*, 78 F.3d 333 (8th Cir. 1996)....18

*Leahy v. Edmonds Sch. Dist.*, No. C07-1970 RSM, 2008 WL 11508397 (W.D. Wash. Nov. 10, 2008) ....15

*Legal Env't Assistance Found., Inc. v. U.S. E.P.A.*, 118 F.3d 1467 (11th Cir. 1997)....4

*Leonard v. Masterson*, 896 N.Y.S.2d 358 (App. Div. 2010)....14

*Love v. Pennsylvania Higher Educ. Assistance Agency*, No. 1:19-CV-02387-JPB, 2020 WL 1545798 (N.D. Ga. Mar. 16, 2020)....8

*McCoy v. Augusta Fiberglass Coatings, Inc.*, 593 F.3d 737 (8th Cir. 2010) .... 5-6

*McCulloch v. PNC Bank Inc.*, 298 F.3d 1217 (11th Cir. 2002)....19

*Mermigas v. Higher Educ. Loan Auth.*, No. 24-CV-11505, 2025 WL 2576745 (N.D. Ill. Sept. 4, 2025) .... *passim*

*Metro. St. Louis Sewer Dist. v. City of Bellefontaine Neighbors*, 476 S.W.3d 913, 921 (Mo. 2016) ....17

*Metzger Motor Car Co. v. Parrott*, 233 U.S. 36 (1914) ....5

*Missouri v. Biden*, 112 F.4th 531 (8th Cir. 2024)....3

*Missouri v. Biden*, 738 F. Supp. 3d 1113 (E.D. Mo. 2024) ....3

*Missouri v. Trump*, 128 F.4th 979 (8th Cir. 2025).... 1-3

*Montgomery v. Louisiana*, 577 U.S. 190 (2016) ....4

*Nichols v. City of Kirksville*, 68 F.3d 245 (8th Cir. 1995) ....................17

*Norton v. Shelby Cnty.*, 118 U.S. 425 (1886) ....................4

*Ottgen v. Clover Park Tech. Coll.*, 928 P.2d 1119 (Wash. Ct. App. 1996) ....................15

*Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480 (9th Cir. 1995) ....................19

*Poke v. Indep. Sch. Dist.*, 647 S.W.3d 18 (Mo. 2022) ....................17

*Rodgers v. Mabelvale Extension Rd. Imp. Dist. No. 5 of Saline Cnty.*, 103 F.2d 844 (8th Cir. 1939).................... 5-6

*Rodriguez v. Ocwen Fin. Corp.*, No. 17-CV-60574, 2017 WL 3593972 (S.D. Fla. Aug. 21, 2017) ....................13

*Sauk-Suiattle Indian Tribe v. City of Seattle*, 525 P.3d 238 (Wash. Ct. App. 2023) ....................15

*Sweda v. Upper Bucks Cnty. Tech. Sch.*, No. CV 22-1787, 2023 WL 5351980 (E.D. Pa. Aug. 18, 2023)....................5

*Syngenta Seeds, Inc. v. Bunge N. Am., Inc.*, 773 F.3d 58 (8th Cir. 2014) ....................7

*Travis v. Navient Corp.*, 460 F. Supp. 3d 269 (E.D.N.Y. 2020).................... 7-9

*United States v. Goodner Bros. Aircraft*, 966 F.2d 380 (8th Cir. 1992)....................4

*United/Xcel-RX, LLC v. Express Scripts, Inc.*, No. 4:19-CV-00221-SRC, 2019 WL 5536806 (E.D. Mo. Oct. 25, 2019) ....................19

*Wade v. Pennsylvania Higher Educ. Assistance Agency*, No. CV 21-11595 (CPO), 2022 WL 1115275 (D.N.J. Apr. 14, 2022) ....................8

*Walton v. New York State Dep't of Corr. Servs.*, 808 N.Y.S.2d 483 (App. Div. 2006), *aff'd as modified*, 863 N.E.2d 1001 (N.Y. 2007)....................13

*Washington Nat. Gas Co. v. Pub. Util. Dist. No. 1 of Snohomish Cnty.*, 459 P.2d 633 (Wash. 1969)....................15

*Winebarger v. Pennsylvania Higher Educ. Assistance Agency*, 411 F. Supp. 3d 1070 (C.D. Cal. 2019).................... 7-8

*Witham v. Clallam Cnty. Pub. Hosp. Dist. 2*, No. C09-5410RJB, 2009 WL 3346041....................15

*Witz v. Great Lakes Educ. Loan Servs., Inc.*, 752 F. Supp. 3d 980 (N.D. Ill. 2024) ........7-8, 10-11

**Statutes and Constitutional Provisions**

20 U.S.C. § 1082 ....................10, 19

20 U.S.C. § 1087f ....................19

Fla. Stat. § 501.201 *et seq.* .................... *passim*

Fla. Stat. § 501.203 ....................13

Fla. Stat. § 501.204 ....................12

Mo. Rev. Stat. § 173.360 .................... *passim*

Mo. Rev. Stat. § 537.600 .................... 16-17

New York General Business Law § 349 .................... *passim*

Wash. Rev. Code § 19.86.010 *et seq.* .................... *passim*

**Rules**

Federal Rule of Civil Procedure 8(a)(2) ....................2

**Regulations**

48 C.F.R. § 52.233 ....................7, 9

## Introduction

Defendant the Higher Education Loan Authority of the State of Missouri ("MOHELA"), acting on behalf of the U.S. Department of Education (the "ED"), services Plaintiffs' federal student loans. Plaintiffs complain that MOHELA did not provide them with borrower-friendly loan benefits that the ED erroneously promised under its so-called "SAVE Rule," which has been vacated by this Court after the Eighth Circuit found it to be invalid. *See Missouri v. Trump*, 128 F.4th 979, 987 (8th Cir. 2025). Plaintiffs claim that by not providing these benefits, MOHELA: (a) breached its loan servicing contracts with the ED and Plaintiffs' master promissory notes with the ED (Counts 1-3); and (b) violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.* (Counts 4-5), the New York General Business Law ("NYGBL") § 349 (Counts 6-7), and the Washington Consumer Protection Act ("WCPA"), Wash. Rev. Code § 19.86.010 *et seq.* (Counts 8-10).

The Court should dismiss Plaintiffs' Complaint for several independent reasons.

*First,* all of Plaintiffs' claims fail because the SAVE Rule was void ab initio and, thus, Plaintiffs were never entitled to the alleged rule's benefits from anyone, let alone from MOHELA.

*Second*, Plaintiffs' contract claims (Counts 1-3) fail because there is no contractual privity between MOHELA and Plaintiffs and, thus, MOHELA owes no contractual obligations to them. Plaintiffs are neither parties to, nor third-party beneficiaries of, MOHELA's federal loan servicing contracts with the ED. Similarly, MOHELA is neither a party to, nor an assignee of, Plaintiffs' master promissory notes with the ED. In addition, the ED's sovereign immunity—which MOHELA shares in for the reasons discussed below—bars Plaintiffs' claims under the notes.

*Third*, Plaintiffs' claims under the FDUTPA, the NYGBL, and the WCPA (Counts 4-10) fail because: (a) these statutes do not apply to governmental entities such as MOHELA or loan servicing; and (b) state sovereign immunity otherwise bars the claims.

*Fourth*, Plaintiffs' claims are improper attempts to enforce the Higher Education Act even though there is no private right of action under it.

**Factual Background[1]**

Plaintiffs have federal student loans. Compl. ¶¶ 13-18, 190, 204, 216, 236, 249, 265. Their loans are governed by their master promissory notes with the ED (the "Notes"), the Higher Education Act ("HEA"), 20 U.S.C. § 1001 *et seq.*, and the ED's regulations under the HEA. Compl. ¶¶ 40, 42, 191, 205, 217, 237, 250, 266.

MOHELA is established by Missouri statutes as a "body politic and corporate" and "public instrumentality" of the State of Missouri. Mo. Rev. Stat. § 173.360; *see also Biden v. Nebraska*, 600 U.S. 488, 491, 506 (2023) (recognizing MOHELA as a part of, an arm of, and an instrumentality of the State of Missouri). It has serviced Plaintiffs' loans on behalf of the ED (which owns the loans) pursuant to contracts with the ED (the "Servicing Contracts"), including the Direct Loan Contract (the "DL Contract") and the Unified Servicing and Data Solutions Contract (the "USDS Contract"). Compl. ¶ 2, 68, 192, 206, 219, 240, 252, 267; Compl. Exs. A-B.

In 2023, the ED promulgated a new rule (the "SAVE Rule") that transformed a pre-existing plan for repaying federal student loans into the "Saving on a Valuable Education" ("SAVE") plan. Compl. ¶ 4. Among other things, "the SAVE plan protected more of a borrower's income by reducing the amount of income subject to loan payments, eliminated interest accrual, and expedited loan forgiveness for most borrowers." *Trump*, 128 F.4th at 987.

[1] The facts included herein are taken from the Complaint and are assumed to be true solely for purposes of the motion to dismiss. The Complaint unnecessarily consists of 78 pages and 370 paragraphs, the vast majority of which have no relevance to the asserted claims. The Court would be justified in dismissing the Complaint for violating Rule 8(a)(2), which requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

Several states challenged the validity of the SAVE Rule in this Court. On June 24, 2024, this Court (Judge Ross) preliminarily enjoined the SAVE Rule's loan forgiveness provisions. *Missouri v. Biden*, 738 F. Supp. 3d 1113 (E.D. Mo. 2024). On July 18, 2024, and August 9, 2024, the Eighth Circuit expanded the preliminary injunction, pending appeal, by enjoining the ED "from any further forgiveness of principal or interest, from not charging borrowers accrued interest, and from further implementing SAVE's payment-threshold provisions." *Missouri v. Biden*, 112 F.4th 531, 538 (8th Cir. 2024). On February 18, 2025, the Eighth Circuit ruled that the entire SAVE Rule was likely invalid as exceeding the ED's authority and directed this Court to issue a nationwide preliminary injunction precluding implementation of the entire rule. *Trump*, 128 F.4th at 987. And on March 9, 2026, the Eighth Circuit directed this Court to issue a final judgment vacating the SAVE Rule. *See* Case No. 26-1394 (8th Cir.). On March 10, 2026, this Court did so. Case No. 4:24-cv-00520-JAR, ECF #102.

Despite the ED's SAVE Rule being invalid, void ab initio, and vacated, Plaintiffs have sued MOHELA for allegedly failing to implement certain aspects of that rule (and related directives from the ED). Compl. ¶¶ 5, 139. Namely, they assert that "MOHELA failed to fulfill its legal obligations as a federal student loan servicer and materially interfered with borrowers' statutory rights under the HEA." *Id.* ¶ 145. But because the HEA provides no private cause of action, they attempt to enforce their alleged rights under the HEA and the SAVE Rule through purported claims against MOHELA for breach of contract (the Servicing Contracts and the Notes) and violation of three state statutes (the FDUTPA, the NYGBL, and the WCPA).

## Argument

**1. Plaintiffs' claims fail because they never had any rights under the vacated and void ab initio SAVE Rule.**

Plaintiffs' entire case is based on their contention that MOHELA improperly denied them rights to which they were allegedly entitled under the SAVE Rule (and the ED's SAVE-related directives). But Plaintiffs *never had* any such rights. Indeed, the Eighth Circuit has held that the SAVE Rule is invalid, and the rule has been vacated by this Court (at the Eighth Circuit's direction). Plaintiffs cannot recover against MOHELA under a law—the Save Rule—that was illegal and no longer exists. Thus, Plaintiffs' claims fail, and the Complaint should be dismissed.

The invalid SAVE Rule—like an unconstitutional statute—was void ab initio, meaning it "confers no rights" on Plaintiffs, "imposes no duties" on MOHELA, and "is, in legal contemplation, as inoperative as though it had never been passed." *Norton v. Shelby Cnty.*, 118 U.S. 425, 442 (1886); *see also United States v. Goodner Bros. Aircraft*, 966 F.2d 380, 384-85 (8th Cir. 1992) (rejecting government's argument that invalidation of EPA rule under which defendant was convicted did not apply retroactively, concluding that the rule had "no force or effect of law and therefore is void ab initio"); *Montgomery v. Louisiana*, 577 U.S. 190, 204 (2016) ("[An unconstitutional law is void, and is as no law. A penalty imposed pursuant to an unconstitutional law is no less void because the prisoner's sentence became final before the law was held unconstitutional. There is no grandfather clause that permits States to enforce punishments the Constitution forbids." (quotation omitted)); *Legal Env't Assistance Found., Inc. v. U.S. E.P.A.*, 118 F.3d 1467, 1473 (11th Cir. 1997) ("[I]f the UIC regulations are inconsistent with the statute, as LEAF contends, these regulations are void ab initio and cannot be relied upon by EPA to deny LEAF's petition for withdrawal of the Alabama program.").

The Supreme Court, the Eighth Circuit, and numerous other courts have repeatedly held that private parties have no rights under an invalid law (e.g., the SAVE Rule), even before a court has determined the law is invalid, because invalid laws are void ab initio. *Metzger Motor Car Co. v. Parrott*, 233 U.S. 36, 40-42 (1914); *McCoy v. Augusta Fiberglass Coatings, Inc.*, 593 F.3d 737, 743-44 (8th Cir. 2010); *Rodgers v. Mabelvale Extension Rd. Imp. Dist. No. 5 of Saline Cnty.*, 103 F.2d 844, 846-47 (8th Cir. 1939); *Sweda v. Upper Bucks Cnty. Tech. Sch.*, No. CV 22-1787, 2023 WL 5351980, at *9–10 (E.D. Pa. Aug. 18, 2023) ("The doctrine of void ab initio is a legal theory stating that a statute or regulation held unconstitutional is void in its entirety and is treated as if it had never existed." (quotation omitted)); *Geft Outdoor LLC v. Consol. City of Indianapolis & Cnty. of Marion, Indiana*, 187 F. Supp. 3d 1002, 1012 (S.D. Ind. 2016) ("A party derives no rights based on an unconstitutional statute; an unconstitutional law is void, and is as no law." (quotation omitted)); *Gary v. Spires*, 473 F. Supp. 878, 883 (D.S.C. 1979) ("[A]n unconstitutional statute provides no basis for the assertion of rights, but is to be treated as if it never existed.")

In *Metzger*, the plaintiff, who was involved in a vehicle accident, obtained judgment against the defendant owner of the vehicle based on a state statute that imposed strict liability on the owner of a vehicle negligently driven by someone else. After the trial, the Michigan Supreme Court ruled in a different case that this state statute was unconstitutional. As a result, the United States Supreme Court reversed the judgment against the defendant because the state statute was void ab initio, "there was admittedly no right to recover in the absence of a valid statute," and "there is no foundation whatever for upholding assumed rights which can alone rest upon the existence of a state statute when the state court of last resort has held there is no valid statute to sustain them." 233 U.S. at 41-42.

In *McCoy*, the Eighth Circuit rejected the defendant's contention that it was entitled under an Arkansas statute to have had the jury instructed that the jury could apportion fault to a non-party because, while the appeal was pending, the Arkansas Supreme Court ruled in another case that the statute was unconstitutional. Because the statute was unconstitutional, the Eighth Circuit held that "it is treated as if it had never been passed." 593 F.3d at 744.

And in *Rodgers*, the Eighth Circuit held that a plaintiff could not enforce bonds that he purchased under a state statute that was later held to be unconstitutional:

> An unconstitutional law is in reality no law, and generally is as inoperative as if it had never been passed. The act here challenged was constitutionally void not only from the time it was so declared by the Supreme Court of Arkansas, but ab initio. It therefore conferred no rights, created no authority in anyone, and justified no acts performed under it.

103 F.2d at 846-47.

In a nutshell, Plaintiffs' claims are based on MOHELA's alleged failures to implement the benefits of the illegal SAVE Rule. But the SAVE Rule is void ab initio, so Plaintiffs never had any rights under it, and MOHELA never had any obligations under it. Plaintiffs improperly ask the Court to penalize MOHELA based on an invalid law. As a result, Plaintiffs have failed to state a plausible claim for relief, and the Court should dismiss the Complaint.

**2. Plaintiffs' contract claims (Count 1-3) fail because: (a) MOHELA does not owe any obligations to Plaintiffs under the Servicing Contracts or the Notes; and (b) the ED's sovereign immunity bars Plaintiffs' claims under the Notes.**

In Counts 1-3, Plaintiffs allege that MOHELA breached the Servicing Contracts and/or the Notes because of its alleged improper servicing of Plaintiffs' loans. Counts 1-3 fail because: (a) there is no contractual relationship between MOHELA and Plaintiffs; and (b) ED's sovereign immunity bars Plaintiffs' claims under the Notes.

**a. Plaintiffs have no claim under the Servicing Contracts.**

Plaintiffs are not parties to the Servicing Contracts, but nevertheless contend they can sue for MOHELA's alleged breaches because they are purportedly third-party beneficiaries. Compl. ¶¶ 72, 78, 294, 305, 316. As a matter of law, Plaintiffs are not intended third-party beneficiaries and, thus, cannot sue under the Servicing Contracts.

The interpretation of federal contracts, including alleged third-party beneficiary status, is governed by federal common law. *Witz v. Great Lakes Educ. Loan Servs., Inc.*, 752 F. Supp. 3d 980, 986 (N.D. Ill. 2024); *Travis v. Navient Corp.*, 460 F. Supp. 3d 269, 284 (E.D.N.Y. 2020); *Hyland v. Navient Corp.*, No. 18CV9031(DLC), 2019 WL 2918238, at *8 (S.D.N.Y. July 8, 2019); *Winebarger v. Pennsylvania Higher Educ. Assistance Agency*, 411 F. Supp. 3d 1070, 1092 n.13 (C.D. Cal. 2019)). The Servicing Contracts expressly incorporate 48 C.F.R. § 52.233-4, which states that "United States law will apply to resolve any claim of breach of this contract." Compl. Ex. A, ECF Page ID#99, Paragraph B.13(a)(3); Compl. Ex. B, ECF Page ID#192.

With federal government contracts, "[a] nonparty becomes legally entitled to a benefit promised in a contract . . . only if the contracting parties so intend.'" *Syngenta Seeds, Inc. v. Bunge N. Am., Inc.*, 773 F.3d 58, 64 (8th Cir. 2014) (quoting *Astra USA, Inc. v. Santa Clara Cnty., Cal.*, 563 U.S. 110, 117 (2011)). "Proving third-party beneficiary status requires that the contract terms clearly evidence [ ] an intent to permit enforcement by the third party in question." *Travis*, 460 F. Supp. 3d at 284 (quotations omitted). "[I]ndividual members of the public are treated as incidental beneficiaries unless a different intention is manifested." *Id.* (quotations omitted); *see also Hyland*, 2019 WL 2918238, at *8 (same).

Federal courts have repeatedly held that student loan borrowers such as Plaintiffs are *not* third-party beneficiaries of the ED's servicing contracts with servicers such as MOHELA because:

- the contracts contain no language evidencing an intent to make student loan borrowers third-party beneficiaries with rights of enforcement; and

- the HEA provides no private right of action and empowers only the Secretary of Education to enforce it.

*See Witz*, 752 F. Supp. 3d at 986-88; *Wade v. Pennsylvania Higher Educ. Assistance Agency*, No. CV 21-11595 (CPO), 2022 WL 1115275, at *2-3 (D.N.J. Apr. 14, 2022); *Edelman v. United States Gov't*, No. 18-CV-2143(JS)(AKT), 2020 WL 7123175, at *11 (E.D.N.Y. Dec. 4, 2020); *Travis*, 460 F. Supp. 3d at 284; *Love v. Pennsylvania Higher Educ. Assistance Agency*, No. 1:19-CV-02387-JPB, 2020 WL 1545798, at *8 (N.D. Ga. Mar. 16, 2020); *Winebarger*, 411 F. Supp. 3d at 1092; *Hyland* 2019 WL 2918238, at *8. As most recently explained in *Witz*:

> Plaintiff has failed to identify any language in the servicing contract that clearly shows an intent to permit enforcement by third parties. It is not enough that the borrowers benefit from Defendant's performance under the servicing contract, as such incidental benefit does not rise to the level of an intent to permit enforcement. As a result, Plaintiff's third-party contract claim is an improper attempt to enforce the HEA where no private right of action exists.

752 F. Supp. at 987–88.

On their face, the Servicing Contracts do not provide any third-party beneficiary rights for borrowers such as Plaintiffs. Without citing to any language in the actual contracts, Plaintiffs falsely allege that "[t]he Servicing Contracts expressly provided that MOHELA would service loans in compliance with all applicable federal and state laws, rules, regulations, and Department of Education guidelines, *for the benefit of borrowers*…." Compl. ¶¶ 294, 305, 316 (emphasis added). But neither contract contains the phrase "for the benefit of borrowers" or anything remotely similar.

The DL Contract includes express third-party beneficiary rights, but only with respect to certain intellectual property issues. Compl. Ex. A, ECF PageID #89, Paragraph B.9(c). By granting third-party beneficiary rights in some limited cases, the DL Contract, by implication, excludes any

other third-party beneficiary rights, such as those claimed by Plaintiffs here. *See Travis*, 460 F. Supp. at 284.

The USDS Contract does not mention third-party beneficiaries whatsoever. Even more tellingly, the contract incorporates 48 C.F.R. § 52.233-1, which provides that [e]xcept as provided in 41 U.S.C. chapter 71 (the Contract Disputes Act), "all disputes arising under or relating to this contract shall be resolved under this clause." Compl. Ex. B, Page ID#192. Section 52.233-1 only allows for claims "by one of the contracting parties," either the "Contractor" or the "Government." Section 52.233-1 does not contemplate claims by any third-party beneficiaries (or anyone else), which establishes that Plaintiffs cannot be intended third-party beneficiaries of the USDS Contract.

Moreover, Plaintiffs cannot be intended third-party beneficiaries of the Servicing Contracts because the very purpose of those contracts is for MOHELA to administer certain of *the ED's rights* in connection with *the borrowers' loan obligations* to the ED. Accordingly, as numerous courts have held, Plaintiffs are not third-party beneficiaries of the Servicing Contracts, so Counts 1-3 should be dismissed.

**b. MOHELA is not a party to the Notes and has no obligations under the Notes.**

Plaintiffs also contend that MOHELA somehow breached the Notes. But MOHELA has never been a party to the Notes and has no obligations under those instruments. The parties to the Notes are Plaintiffs and the ED, not MOHELA. As Plaintiffs concede, the Notes are "a contract between the [ED] and the borrower[s]" and "Plaintiffs … entered into [the Notes] with the [ED] for the issuance and repayment of federally held loans." Compl. ¶¶ 40, 296, 307, 318.

Plaintiffs assert that MOHELA somehow "became an assignee" of the Notes such that "at all relevant times, Plaintiffs … were in a contractual relationship with MOHELA, as assignee under the … Notes," and "[a]s an assignee of the [ED] under the … Notes, MOHELA assumed

the [ED's] contractual obligations to Plaintiffs." Compl. ¶¶ 297-98, 308-09, 319-20. But Plaintiffs' own allegations refute their implausible "assignment" theory:

- "*Student loan servicers, including MOHELA, do not own the loans they service under the Direct Loan Program*. Rather, they perform services on behalf of the [ED] pursuant to servicing contracts."

- "*The Department is the legal holder of federal student loans* made under the Direct Loan Program."

Compl. ¶¶ 23, 45 (emphasis added). The ED, not MOHELA, made the loans to Plaintiffs, and the ED, not MOHELA, owns the loans and is entitled to all loan repayments made by Plaintiffs. Plaintiffs cite no provision in the Notes, the Servicing Contracts, or any other document providing that the ED assigned the Notes to MOHELA. Thus, Counts 1-3 should be dismissed.

**c. The ED's sovereign immunity bars Plaintiffs' claims against MOHELA under the Notes.**

Even if MOHELA were the ED's assignee (which it is not), the ED's sovereign immunity would bar Plaintiffs' claims as to the Notes. "A partial assignee can be sued for a breach of the assigned contractual obligations only if the assignor could also be sued for breach of contract." *Witz*, 752 F. Supp. 3d at 988. Plaintiffs cannot sue the ED for breach of the Notes because of the ED's sovereign immunity under 20 U.S.C. § 1082(a)(2) of the HEA:

> Under the doctrine of sovereign immunity, the United States cannot be sued unless it gives express consent to the jurisdiction of the court in which it is sued….
>
> Although § 1082(a)(2) waives the federal government's sovereign immunity with respect to certain claims against the Secretary, the claims here do not fall within the scope of that statute.
>
> To begin, § 1082(a)(2) waives sovereign immunity only with respect to claims "arising under" the HEA, but Plaintiff's claim is based on an alleged breach of his MPN (a breach of contract claim). In addition, the waiver set forth in § 1082(a)(2) was crafted to expressly exclude claims seeking an "attachment, injunction, garnishment or similar process" against the Secretary. *Id.* This exclusionary language bars Plaintiff's claims related to his student loans because Plaintiff is, in essence, seeking injunctive relief that would: (1) require an adjustment of his

> current outstanding loan balances; or (2) prohibit the federal government from collecting certain sums from him. But this Court lacks the power to order that remedy against the federal government.

*Id.* at 989. In turn, if MOHELA were the ED's alleged assignee (which it is not), MOHELA would stand in the ED's shoes and would have the same immunity from liability. *Id.* ("[B]ecause the federal government would not have waived sovereign immunity under the HEA if Plaintiff's claims were asserted against it, Plaintiff cannot sue Defendant [a federal loan servicer] as a partial assignee."). Counts 1-3, therefore, should be dismissed.

**3. Plaintiffs' statutory claims (Counts 4-10) fail because the Florida, New York, and Washington statutes are inapplicable and the claims are barred by state sovereign immunity.**

In Counts 4-10, Plaintiffs attempt to hold MOHELA liable under the FDUTPA, the NYGBL, and the WCPA. But as discussed below, these state statutes do not apply to governmental entities such as MOHELA and/or loan servicing.[2] And under *Franchise Tax Bd. of California v. Hyatt*, 578 U.S. 171 (2016) ("*Hyatt II*"), a state statute (e.g., the FDUTPA, the NYGBL, and the WCPA) that does not apply to the enacting state's own governmental entities likewise cannot apply to the governmental entities (e.g., MOHELA) of another state (e.g., Missouri) because one state cannot disregard its own ordinary legal principles and apply special and discriminatory rules to the governmental entities of another state. *Id.* at 176-180 (Nevada could not impose $1 million liability on California Franchise Tax Board where Nevada law limits liability of Nevada governmental agencies to $50,000); *see also Mermigas v. Higher Educ. Loan Auth.*, No. 24-CV-11505, 2025 WL 2576745, at *2-3 (N.D. Ill. Sept. 4, 2025) (Illinois Consumer Fraud Act does not apply to MOHELA because the Act does not apply to governmental entities).

---

[2] State consumer protection statutes such as the FDUTPA, the NYGBL, and the WCPA typically do not apply to governmental entities. Missouri's consumer protection statute (the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010 *et. seq.*) does not apply to governmental entities. *Bottorff-Arey v. Truman State Univ.*, 633 S.W.3d 508, 514–15 (Mo. Ct. App. 2021).

Moreover, Plaintiffs' claims under the FDUTPA, the NYGBL, and the WCPA are barred by state sovereign immunity. The Court, therefore, should dismiss Counts 4-10.

**a. The FDUTPA (Counts 4-5) does not apply to governmental entities such as MOHELA and does not apply to loan servicing and collection activity.**

In Counts 4-5, Plaintiffs allege that MOHELA violated the FDUTPA because of its alleged improper servicing of their loans. Counts 4-5 should be dismissed for two independent, but equally compelling, reasons.

First, the FDUTPA does not apply to governmental entities such as MOHELA. *Curcio v. State Dep't of Lottery*, 164 So. 3d 750, 754 (Fla. Dist. Ct. App. 2015) (FDUTPA did not apply to Florida Lottery); *DBI Servs. LLC v. Shorter*, No. 4:16-CV-127MW/CAS, 2017 WL 11629340, at *1 (N.D. Fla. May 1, 2017) (FDUTPA did not apply to Florida Department of Transportation). Under *Hyatt II*, a Florida statute (e.g., the FDUTPA) that does not apply to Florida's own governmental entities likewise cannot apply to the governmental entities of another state. 578 U.S. at 176-180. MOHELA is indisputably a governmental entity of Missouri. Mo. Rev. Stat. § 173.360; *Biden v. Nebraska*, 600 U.S. 488, 491, 506 (2023); *Dykes v. Missouri Higher Educ. Loan Auth.*, No. 4:21-CV-00083-RWS, 2021 WL 3206691, at *5-6 (E.D. Mo. July 29, 2021). Thus, MOHELA is not subject to liability under the FDUTPA, and the Court should dismiss Counts 4-5. *See, e.g., Mermigas*, 2025 WL 2576745, at *2-3.

Second, MOHELA cannot be liable under the FDUTPA because the statute does not apply to loan servicing activity, such as MOHELA's servicing of Plaintiffs' loans. The FDUTPA provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices *in the conduct of any trade or commerce* are hereby declared unlawful." Fla. Stat. § 501.204(1) (emphasis added). "Trade or commerce" is defined as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good

or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla. Stat. § 501.203(8). Courts interpreting Florida law have held that "[s]ervicing and loan collection activity is not 'trade or commerce' as a matter of law." *Genao v. CitiMortgage, Inc.*, No. 16-23111-CIV, 2017 WL 10775439, at *4–5 (S.D. Fla. Feb. 10, 2017) (dismissing claim against loan servicing company), *report and recommendation adopted*, No. 16-23111-CIV, 2017 WL 10775411 (S.D. Fla. Mar. 1, 2017); *see also Jean-Jacques v. Shellpoint Mortg. Servicing*, No. 20-61813-CV, 2021 WL 8894470, at *2 (S.D. Fla. Feb. 3, 2021); *Rodriguez v. Ocwen Fin. Corp.*, No. 17-CV-60574, 2017 WL 3593972, at *6 (S.D. Fla. Aug. 21, 2017); *Benjamin v. CitiMortgage, Inc.*, No. 12-62291-CIV, 2013 WL 1891284, at *5 (S.D. Fla. May 6, 2013). Indeed, a Florida court has specifically held that the FDUTPA does not apply to MOHELA for this very reason. *See Dykes v. MOHELA*, Circuit Court of Pinellas County, Florida, Case No. 19-0007394-CI (2020) (copy of decision attached hereto as **Exhibit 1**). Counts 4-5 should be dismissed.

**b. The NYGBL (Counts 6-7) does not apply to governmental entities such as MOHELA.**

In Counts 6-7, Plaintiffs allege that MOHELA violated NYGBL § 349 because of its alleged improper servicing of their loans. Counts 6-7 should likewise be dismissed.

First, NYGBL § 349 does not apply to governmental entities such as MOHELA. *Walton v. New York State Dep't of Corr. Servs.*, 808 N.Y.S.2d 483, 486 (App. Div. 2006) (NYGBL § 349 does not apply to state agencies), *aff'd as modified*, 863 N.E.2d 1001 (N.Y. 2007) (affirming Appellate Division's holding that NYGBL § 349 does not apply to state agencies); *Downing v. New York City Hous. Auth.*, 117 N.Y.S.3d 464 (N.Y. Sup. Ct. 2019) (NYGBL § 349 does not apply to cities). NYGBL "section 349 authorizes a claim for deceptive business practices only against a 'person, firm, corporation or association.'" *Walton*, 808 N.Y.S.2d at 486. Governmental entities

are not a "person, firm, corporation or association" for purposes of NYGBL § 349. *Id.* Under New York law, "[a] statute does not apply to a governmental entity where its sovereign rights, prerogatives, or interests are involved, unless the entity is specifically mentioned therein or included by necessary implication," and "the term 'person' generally does not include a governmental entity … unless a statutory definition expressly includes that governmental entity within the meaning of the term." *Leonard v. Masterson*, 896 N.Y.S.2d 358, 360 (App. Div. 2010).

While these decisions involved New York governmental entities, under *Hyatt II* (discussed above), a New York statute (e.g., the NYGBL § 349) that does not apply to New York's own governmental entities likewise cannot apply to the governmental entities of another state. 578 U.S. at 176-180. MOHELA is indisputably a governmental entity of Missouri. Mo. Rev. Stat. § 173.360; *Biden*, 600 U.S. at 491, 506; *Dykes*, 2021 WL 3206691, at *5-6. Thus, MOHELA is not subject to liability under the NYGBL, and the Court should dismiss Counts 6-7. *Mermigas*, 2025 WL 2576745, at *2-3.

Second, Plaintiffs' claims under NYGBL § 349 fail because they do not allege in their Complaint, nor could they allege, that the acts complained of occurred in New York. *See Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 324 (2002) ("[T]he transaction in which the consumer is deceived must occur in New York…. [T]o qualify as a prohibited act under the statute, the deception of a consumer must occur in New York."). Plaintiffs complain about MOHELA's servicing of their loans. MOHELA services federal student loans pursuant to its contracts with the ED in Missouri, not New York. Counts 6-7, therefore, should be dismissed.

**c. Governmental entities such as MOHELA are not subject to liability under the WCPA (Counts 8-10).**

In Counts 8-10, Plaintiffs allege that MOHELA violated the WCPA because of its alleged improper servicing of their loans. But governmental entities such as MOHELA are not subject to

liability under the WCPA. *Washington Nat. Gas Co. v. Pub. Util. Dist. No. 1 of Snohomish Cnty.*, 459 P.2d 633, 635–36 (Wash. 1969) (municipal corporations and political subdivisions are not subject to liability under WCPA). In *Washington Nat. Gas Co.,* the Washington Supreme Court unanimously stated:

> By its very terms, that act, RCW 19.86, includes only "natural persons, corporations, trusts, unincorporated associations and partnerships." RCW 19.86.010. Nowhere does its language imply that municipal corporations or political subdivisions are within the definition of person and entities made subject to it…. Where a statute specifically designates the things or classes of things upon which it operates, an inference arises in law that all things or classes of things omitted from it were intentionally omitted by the legislature under the maxim expressio unius est exclusio alterius—specific inclusions exclude implication.

*Id.* at 635-36.

Many Washington cases have relied on and followed this precedent to conclude that a wide variety of governmental entities are exempt from the WCPA. *See Haberman v. Washington Pub. Power Supply Sys.*, 744 P.2d 1032, 1071-72 (Wash. 1987) ("governmental entities" are "exempt from the [W]CPA"), *amended*, 750 P.2d 254 (Wash. 1988); *Witham v. Clallam Cnty. Pub. Hosp. Dist. 2*, No. C09-5410RJB, 2009 WL 3346041, at *5-7 (W.D. Wash. Oct. 15, 2009) (public hospital districts not subject to liability under WCPA; "In its analysis in *Washington Natural Gas,* the [Washington Supreme] Court did not concern itself with what type of activity the defendant had engaged in, or whether or not that activity was regulated; the defendant's status as a municipal corporation was dispositive."); *Sauk-Suiattle Indian Tribe v. City of Seattle*, 525 P.3d 238, 241-42 (Wash. Ct. App. 2023) (cities not subject to liability under WCPA); *Leahy v. Edmonds Sch. Dist.*, No. C07-1970 RSM, 2008 WL 11508397, at *8 (W.D. Wash. Nov. 10, 2008) (school districts not subject to liability under WCPA); *Ottgen v. Clover Park Tech. Coll.*, 928 P.2d 1119, 1122 (Wash. Ct. App. 1996) (public colleges not subject to liability under WCPA); *Keenan v. Allan*, 889 F. Supp. 1320, 1383 (E.D. Wash. 1995) (counties not subject to liability under WCPA).

While these decisions involved Washington governmental entities, under *Hyatt II*, a Washington statute (e.g., the WCPA) that does not apply to Washington's own governmental entities likewise cannot apply to the governmental entities of other states. 578 U.S. at 176-180. MOHELA is indisputably a governmental entity of Missouri. Mo. Rev. Stat. § 173.360; *Biden v. Nebraska*, 600 U.S. at 491, 506; *Dykes*, 2021 WL 3206691, at *5-6. Thus, MOHELA is not subject to liability under the WCPA, and the Court should dismiss Counts 8-10. *See, e.g., Mermigas*, 2025 WL 2576745, at *2-3.

**d. State sovereign immunity bars Plaintiffs' claims under the FDUTPA, the NYGBL, and the WCPA (Counts 4-10).**

To the extent that the FDUTPA, the NYGBL, and/or the WCPA do apply to MOHELA (which they do not), state sovereign immunity bars Plaintiffs' claims under these state statutes. "'Sovereign immunity is the privilege of the sovereign not to be sued without its consent' that was developed at common law and broadly 'applies against *all* private suits, whether in state or federal court.'" *Harmon v. Preferred Fam. Healthcare, Inc.*, 125 F.4th 874, 882 (8th Cir. 2025) (quoting *Church v. Missouri*, 913 F.3d 736, 742 (8th Cir. 2019) (italics in original)). Such state sovereign immunity is broader than, and exists independently of, any Eleventh Amendment immunity. *Church*, 913 F.3d at 742 ("[S]tates also enjoy a broader sovereign immunity, which applies against *all* private suits, whether in state or federal court."). "Immunity under Mo. Rev. Stat. § 537.600 is broader than the immunity provided by the Eleventh Amendment. It extends to municipalities and other public entities that are not protected by the 11th Amendment." *Dykes*, 2021 WL 3206691, at *5 (holding that MOHELA has state sovereign immunity after rejecting claim of Eleventh Amendment immunity); *see also Mermigas*, 2025 WL 2576745, at *4.

Under Missouri law, "[i]n the absence of an express statutory exception or recognized common-law exception, sovereign immunity is the rule and applies to all suits against [Missouri]

public entities." *City of Harrisonville v. Bd. of Trustees of Mo Petroleum Storage Tank Ins. Fund*, 655 S.W.3d 770, 774 (Mo. 2022) (quotation omitted); *see also* Mo. Rev. Stat. § 537.600.1 ("Such sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977, except to the extent waived, abrogated or modified by statutes in effect prior to that date, shall remain in full force and effect….").[3] As established by Mo. Rev. Stat. § 173.360, and as recognized by the Supreme Court in *Biden*, 600 U.S. at 491, 506, MOHELA is indisputably a Missouri public entity. So MOHELA is entitled to state sovereign immunity, just as this Court and other courts have previously held. *Dykes*, 2021 WL 3206691, at *5-6 (state sovereign immunity barred claims against MOHELA for negligence per se, negligent misrepresentation, and equitable estoppel); *Mermigas*, 2025 WL 2576745, at *3-4 (state sovereign immunity barred claims against MOHELA for unjust enrichment and negligent misrepresentation).

State sovereign immunity applies to statutory, as well as common law, claims, such as Plaintiffs' claims under the FDUTPA, the NYGBL, and the WCPA. *See, e.g., Poke v. Indep. Sch. Dist.*, 647 S.W.3d 18, 21–22 (Mo. 2022) ("This Court's primary task, therefore, is to determine whether section 287.780 provides the express showing of legislative intent required to waive sovereign immunity for workers' compensation retaliation actions brought against governmental entities."); *Nichols v. City of Kirksville*, 68 F.3d 245, 248 (8th Cir. 1995) (sovereign immunity barred claim against city for violating Missouri statute authorizing civil liability for employers who fire an employee in retaliation for a workers' compensation claim).

[3] "Section 537.600 itself waives sovereign immunity only for injuries resulting from public employees' negligent operation of a motor vehicle in the course of employment and for injuries caused by dangerous conditions of the public entity's property. Section 537.610 waives sovereign immunity in certain circumstances involving insurance coverage." *Metro. St. Louis Sewer Dist. v. City of Bellefontaine Neighbors*, 476 S.W.3d 913, 921 (Mo. 2016). None of these exceptions applies in the present case.

Missouri has not waived state sovereign immunity as to the FDUTPA, the NYGBL, or the WCPA.[4] As a result, state sovereign immunity bars Plaintiffs' claims against MOHELA under these statutes, and the Court should dismiss Counts 4-10.

**4. Plaintiffs' claims are improper attempts to enforce the HEA.**

Lastly, each of Plaintiffs' claims is essentially an improper attempt to enforce the HEA. Plaintiffs' claims are based on their allegation that "MOHELA failed to fulfill its legal obligations as a federal student loan servicer and materially interfered with borrowers' statutory rights under the HEA." Compl. ¶ 145. These purported "statutory rights under the HEA" consist solely of the invalid and vacated SAVE Rule, which was purportedly (but improperly) promulgated by the ED under the HEA. *Id.* ¶ 88.

Yet, Plaintiffs cannot assert any claims directly under the HEA because "no private right of action is implied under the HEA for student borrowers." *Labickas v. Arkansas State Univ.*, 78 F.3d 333, 334 (8th Cir. 1996). "[T]he Eighth Circuit, along with every other circuit to address the question, has held that the HEA does not create a private cause of action." *Kuku v. Capella Univ.*, No. 23-CV-3591 (PJS/DJF), 2025 WL 3089558, at *2 (D. Minn. Nov. 5, 2025).

Instead, Plaintiffs attempt to indirectly enforce the HEA (and the SAVE Rule) through disguised claims for breach of contract and violation of three state statutes. Plaintiffs cannot do this. Their claims are improperly masquerading as HEA claims and should be dismissed.

Plaintiffs' grievances—to the extent they have any validity (which they do not)—must be handled by the ED and its administrative processes, not by the courts. "[T]he HEA makes clear that Congress intended the Secretary of Education—not individual students—to enforce its

[4] Likewise, Missouri has not waived sovereign immunity for public entities as to Missouri's own consumer protection statute, the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010 *et. seq.*, which does not apply to governmental entities. *Bottorff-Arey v. Truman State Univ.*, 633 S.W.3d 508, 514-15 (Mo. Ct. App. 2021).

provisions." *Kuku*, 2025 WL 3089558, at *2. Congress has given "extensive enforcement authority … to the Secretary [of Education] under [the HEA]" and "intended this [enforcement] mechanism to be the exclusive means for ensuring … compliance with the statutes and regulations." *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1485 (9th Cir. 1995).

The ED is tasked with enforcing the HEA, including through its oversight of its loan servicers. 20 U.S.C. §§ 1082(a)(1), 1087f. The ED's exclusive authority to enforce the HEA should not be undercut through private litigation. Plaintiffs "cannot circumvent the statutory and regulatory scheme by calling [their] claims a breach of contract." *Gibbs v. SLM Corp.*, 336 F. Supp. 2d 1, 16 (D. Mass. 2004), aff'd, No. 05-1057, 2005 WL 5493113 (1st Cir. Aug. 23, 2005) (dismissing breach of contract claim based on borrower's complaint that defendants acted in violation of ED's regulations governing appropriate amount of interest and penalties because HEA has no private cause of action); *see also United/Xcel-RX, LLC v. Express Scripts, Inc.*, No. 4:19-CV-00221-SRC, 2019 WL 5536806, at *5 (E.D. Mo. Oct. 25, 2019) ("XCelRx attempts the same end-run around the absence of a private right of action here. It tries to enforce the obligations under the AWP through the contract even though the AWP does not create a private right of action…. This cannot be the basis for a breach of contract claim when the AWP does not itself provide for a private right of action."). Nor can Plaintiffs do this by utilizing state consumer protection statutes such as the FDUTPA, the NYGBL, or the WCPA. *See, e.g.*, *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1218-19, 1226-27 (11th Cir. 2002) (affirming dismissal of RICO claim and holding that because "Congress did not intend for [p]laintiffs to have a private right of action [for HEA violations], … and instead provided administrative remedies, it follows that Congress could not have intended for that same violation to constitute a violation of [other statutes].").

In *Astra USA, Inc. v. Santa Clara Cnty.*, 563 U.S. 110, 116-22 (2011), the Supreme Court held that a plaintiff could not enforce a federal statutory scheme, for which there is no private right of action, indirectly through a breach of contract claim. The Court explained: "If [private] parties may not sue under the statute, it would make scant sense to allow them to sue on a form contract implementing the statute, setting out terms identical to those contained in the statute." *Id.* at 114.

Here, Plaintiffs assert that the Servicing Contracts and the Notes are governed by the HEA and that "MOHELA materially breached the Servicing Contracts and the Master Promissory Notes by failing to administer each of Plaintiffs' loans … in accord with federal law [i.e., the HEA]." Compl. ¶¶ 300, 311, 322. As in *Astra*, "[t]he absence of a private right to enforce the [HEA] would be rendered meaningless if [private parties like Plaintiffs] could overcome that obstacle by suing to enforce [contractual or state statutory] obligations," given that the contractual and state statutory obligations "are one and the same." 563 U.S. at 118. Accordingly, Counts 1-10 should be dismissed.

**Conclusion**

The Court should dismiss all of Plaintiffs' claims in the Complaint with prejudice.

Respectfully submitted,

THOMPSON COBURN LLP

By: */s/ Jeffrey R. Fink*

Jeffrey R. Fink, #44963(MO)
Matthew D. Guletz, #57410(MO)
One U.S. Bank Plaza, Suite 2700
St. Louis, Missouri 63101
(314) 552-6000 (telephone)
(314) 552-7000 (facsimile)
jfink@thompsoncoburn.com
mguletz@thompsoncoburn.com

Attorneys for Defendant MOHELA