**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| JONATHAN GIBBS, SUSAN HART, JACOB LEHMAN, ANNETTE A. ROBBINS, ARTHUR SPROGIS, and PAMELA YANGO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI a/k/a MISSOURI HIGHER EDUCATION LOAN AUTHORITY,<br><br>Defendant. | Case No. 4:26-cv-0030-ZMB |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. Plaintiffs State Valid Legal Bases for Their Claims. .......... 2

1. Most of Plaintiffs' Claims Do Not Rely on the SAVE Rule. .......... 2

2. Relevant Portions of the SAVE Rule Were Not Vacated. .......... 2

3. The SAVE Rule Is Not Void *Ab Initio*. .......... 3

4. MOHELA Agreed to Follow the SAVE Rule While in Effect. .......... 6

B. Plaintiffs State Cognizable Breach of Contract Liability Theories. .......... 6

1. Plaintiffs Are Third-Party Beneficiaries of the Servicing Contracts. .......... 7

2. Plaintiffs May Sue MOHELA as Partial Assignee to the Notes. .......... 10

3. MOHELA Is Not Immune from Plaintiffs' Claims Under the Notes. .......... 11

C. Plaintiffs State Cognizable State Statutory Claims. .......... 12

1. MOHELA Is Not Entitled to State Sovereign Immunity. .......... 12

2. The FDUTPA Applies to MOHELA and Its Loan Servicing Activity. .......... 16

3. The NYGBL Applies to MOHELA. .......... 17

4. The WCPA Applies to MOHELA. .......... 18

D. Plaintiffs Do Not Seek to Enforce the Higher Education Act. .......... 19

III. CONCLUSION .......... 20

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Alhassid v. Bank of Am., N.A.*,
60 F. Supp. 3d 1302 (S.D. Fla. 2014) ....................16

*Am. Pub. Health Ass'n v. Nat'l Insts. of Health*,
145 F.4th 39 (1st Cir. 2025)....................4

*Astra USA, Inc. v. Santa Clara County*,
563 U.S. 110 (2011)....................20

*Audio Odyssey, Ltd. v. United States*,
255 F.3d 512 (8th Cir. 2001) ....................7, 9

*Bank of Washington v. Land Clearance for Redev. Auth. of City of St. Louis*,
726 S.W.3d 23 (Mo. Ct. App. 2025)....................13

*Bell v. New York Higher Educ. Assistance Corp.*,
138 Misc.2d 932 (N.Y. Sup. Ct. 1987) ....................17

*Belscher v. New York State Tchrs. Ret. Sys.*,
45 A.D.2d 206 (N.Y App. Div. 1974) ....................17

*Benjamin v. CitiMortgage, Inc.*,
2013 WL 1891384 (S.D. Fla. 2013) ....................17

*Berman v. Pennsylvania Higher Educ. Assistance Agency*,
No. 1:21CV63, 2022 WL 767530 (M.D.N.C. Mar. 14, 2022) ....................10

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016)....................11, 12

*Carr v. Oklahoma Student Loan Auth.*,
699 F. Supp. 3d 1241 (W.D. Okla. 2023)....................10

*Castro v. Kentucky Higher Educ. Student Loan Corp.*,
No. 16-24690, 2017 WL 588379 (S.D. Fla. Feb. 14, 2017) ....................15

*Coffey v. Higher Educ. Loan Auth.*,
770 F.Supp.3d 1332 (M.D. Fla. 2025)....................14, 15

*Coll. Loan Corp. v. SLM Corp.*,
396 F.3d 588 (4th Cir. 2005) ....................19

*Corman v. Acting Sec'y of Pennsylvania Dep't of Health*,
671 Pa. 345 (2021)....................5

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Curcio v. State Dep't of Lottery*,
164 So.3d 750 (Fla. Dist. Ct. App. 2015) ....................16

*DBI Servs. LLC v. Shorter*,
2017 WL 11629340 (N.D. Fla. 2017) ....................16

*Dykes v. Missouri Higher Educ. Loan Authority*,
2021 WL 3206691 (E.D. Mo. 2021) ....................15, 16

*Estes as Next Friend for Doe v. Bd. of Trs. of Missouri Pub. Entity Risk Mgmt. Fund*,
623 S.W.3d 678 (Mo. Ct. App. 2021) ....................13, 15

*In re Express Scripts, Inc., PBM Litig.*,
2008 WL 2952787 (E.D. Mo. July 30, 2008) ....................7

*Franchise Tax Bd. of California v. Hyatt*,
578 U.S. 171 (2016) ....................16

*Gaffney v. Kentucky Higher Educ. Student Loan Corp.*,
2016 WL 3688934 (M.D. Tenn. July 12, 2016) ....................15

*Galette v. New Jersey Transit Corp*,
146 S.Ct. 854 (2026) ....................11

*Gary v. Spires*,
473 F. Supp. 878 (D.S.C. 1979) ....................5

*Geft Outdoor LLC v. Consol. City of Indianapolis & Cnty. of Marion, Indiana*,
187 F. Supp. 3d 1002 (S.D. Ind. 2016) ....................5

*Genao v. CitiMortgage, Inc.*,
2017 WL 10775439 (S.D. Fla. 2017) ....................17

*GEO Group, Inc. v. Menocal*,
146 S. Ct. 774 (2026) ....................11

*Good v. U.S. Dep't of Educ.*,
121 F.4th 772 (10th Cir. 2024) ....................14, 15

*Goshen v. Mut. Life Ins. Co. of New York*,
98 N.Y.2d 314 (2002) ....................18

**TABLE OF AUTHORITIES**
**(continued)**

**Page**


*GreatAmerica Leasing Corp. v. Dolan*,
2011 WL 334829 (D. Minn. Jan. 31, 2011) .......... 10

*Haberman v. Washington Pub. Power Supply Sys.*,
744 P.2d 1032 (Wash. 1987) .......... 18

*Heinz v. Driven Auto Sales, LLC*,
603 S.W.3d 890 (Mo. Ct. App. 2020) .......... 10

*James v. PHEAA*,
2020 WL 2097640 (S.D.N.Y. May 1, 2020) .......... 11

*Jean-Jacques v. Shellpoint Mortg. Servicing*,
2021 WL 8894470 (S.D. Fla. 2021) .......... 17

*Johansson v. Nelnet, Inc.*,
2021 WL 1169409 (D. Neb. Mar. 26, 2021) .......... 10, 20

*Joy, et. al. v. MOHELA*,
No. 4:23-cv-01590-ZMB (E.D. Mo.) .......... 11

*Keenan v. Allan*,
889 F. Supp. 1320 (E.D. Wash. 1995) .......... 19

*Kuku v. Capella Univ.*,
2025 WL 3089558 (D. Minn. Nov. 5, 2025) .......... 19

*Labickas v. Arkansas State Univ.*,
78 F.3d 333 (8th Cir. 1996) .......... 19

*Lackey v. Stinnie*,
604 U.S. 192 (2025) .......... 3

*Leahy v. Edmonds Sch. Dist.*,
2008 WL 11508397 (W.D. Wash. Nov. 10, 2008) .......... 18

*Legal Env't Assistance Found., Inc. v. U.S. E.P.A.*,
118 F.3d 1467 (11th Cir. 1997) .......... 5

*Leonard v. Masterson*,
896 N.Y.S.2d 358 (App. Div. 2010) .......... 17

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Maldonado v. Higher Educ. Loan Auth. of the State of Missouri*,
2025 WL 1085105 (N.D. Cal. Apr. 9, 2025) ....12

*Manetta v. Navient Corp.*,
2021 WL 2886115 (D.N.J. July 8, 2021) ....16

*McCoy v. Augusta Fiberglass Coatings, Inc.*,
593 F.3d 737 (8th Cir. 2010) ....5

*Mermigas v. Higher Education Loan Authority*,
2025 WL 2576745 (N.D. Ill. 2025) ....16

*Metzger Motor Car Co. v. Parrott*,
233 U.S. 36 (1914) ....5

*Missouri v. Trump*,
128 F.4th 979 (8th Cir. 2025) ....3, 4

*Missouri v. Trump*,
2026 WL 696770 (8th Cir. Mar. 9, 2026) ....4

*Missouri v. Trump*,
No. 4:24-cv-520-JAR (E.D. Mo.) ....3, 4, 5

*Montana v. United States*,
124 F.3d 1269 (Fed. Cir. 1997) ....7

*Montgomery v. Louisiana*,
577 U.S. 190 (2016) ....5

*Motor & Equip. Mfrs. Ass'n v. Nichols*,
142 F.3d 449 (D.C. Cir. 1998) ....4

*Neagle v. Goldman Sachs Grp., Inc.*,
2019 WL 1102199 (D. Or. Mar. 1, 2019) ....15

*Nigro v. Pennsylvania Higher Educ. Assistance Agency*,
2020 WL 5369980 (M.D. Pa. Sept. 8, 2020) ....11

*Norton v. Shelby Cnty.*,
118 U.S. 425 (1886) ....5, 6

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Olsen v. Nelnet, Inc.*,
392 F. Supp. 3d 1006 (D. Neb. 2019) .....10, 20

*Ottgen v. Clover Park Tech. Coll.*,
928 P.2d 1119 (Wash. Ct. App. 1996) .....19

*Pandit v. Saxon Mortg. Servs., Inc.*,
2012 WL 4174888 (E.D.N.Y. 2012) .....18

*Pelligrino v. Equifax Info Servs., LLC*,
709 F. Supp. 3d 206 (E.D. Va. 2024) .....11, 14

*Perkins v. Equifax Info. Servs., LLC*,
2020 WL 13120600 (W.D. Tex. 2020) .....14

*Polotensky v. Better Homes Depot, Inc.*,
97 N.Y.2d 46 (Ct. App. 2001) .....17

*Rodgers v. Mabelvale Extension Rd. Imp. Dist. No. 5 of Saline Cnty.*,
103 F.2d 844 (8th Cir. 1939) .....5

*Rodriguez v. Ocwen Fin. Corp.*,
2017 WL 3593972 (S.D. Fla. 2017) .....17

*Sauk-Suiattle Indian Tribe v. City of Seattle*,
525 P.3d 238 (Wash. Ct. App. 2023) .....18

*Stacy v. Truman Med. Ctr.*,
836 S.W.2d 911 (Mo. 1992) (en banc), *abrogated on other grounds by Southers v. City of Farmington*, 263 S.W.3d 603 (Mo. 2008) .....13, 15, 16

*Sweda v. Upper Bucks Cnty. Tech. Sch.*,
2023 WL 5351980 (E.D. Pa. Aug. 18, 2023) .....5

*United States v. Goodner Bros. Aircraft*,
966 F.2d 380 (8th Cir. 1992) .....5

*Walker v. MOHELA*,
2024 WL 3568576 (E.D. Cal. 2024) .....15

*Walton v. New York State Dep't of Corr. Services*,
808 N.Y.S.2d 483 (App. Div. 2006) .....17

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Washington Nat. Gas Co. v. Pub. Util. Dist. No. 1 of Snohomish Cnty.*, 459 P.2d 633 (Wash. 1969) (en banc)....18

*White v. Missouri Higher Educ. Loan Auth.*, 2025 WL 20580 (M.D. Fla. 2026)....14, 15

*Witham v. Clallam Cnty. Pub. Hosp. Dist. 2*, 2009 WL 3346041 (W.D. Wash. Oct. 15, 2009)....18

*Witz v. Great Lakes Educ. Loan Servs., Inc.*, 752 F. Supp. 3d 980 (N.D. Ill. 2024)....12

*Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18 (1940)....11

**Statutes**

20 U.S.C. § 1082(a)(2)....12

Higher Education Act ("HEA")....1, 12, 19, 20

Mo. Stat. §§ 173.360, 173.370.1, 173.370.2....14

New York General Business Law § 349....17

Student Loan Reform Act of 1993, H.R. Rep. No 103-111 (1993)....7

**Other Authorities**

139 Cong. Rec. E1296-01....8

**Regulations**

34 C.F.R. § 685.205(b)(8) & (9)....3

34 C.F.R. § 685.209(a)....2

34 C.F.R. § 685.209(k)(iv)(J)....3

48 C.F.R. § 52.233-1....9

88 Fed. Reg. 43820-01 (July 10, 2023)....8

# TABLE OF AUTHORITIES
**(continued)**

**Page**

**Constitutions**

Eleventh Amendment ..................................................................................................6, 10, 11, 15

## I. INTRODUCTION

Defendant MOHELA services loans for federal student loan borrowers including Plaintiffs. In that role, it was obligated—under two contracts with the U.S. Department of Education ("DOE") (the "Servicing Contracts") and as assignee to Master Promissory Notes entered into between the DOE and individual borrowers (the "Notes")—to comply with all applicable rules, laws, regulations, and guidelines. Instead, over nearly two years, MOHELA committed and oversaw a series of severe operational failures that breached those contracts and violated state laws, resulting in millions of borrowers incurring improper interest, being denied access to statutory payment reductions, and experiencing other concrete financial harms.

In moving to dismiss Plaintiffs' complaint, MOHELA does not dispute its operational failures. Nor does it contend that the facts alleged, if true, would fail to state the claims pled in the complaint. Rather, MOHELA asserts a series of technical arguments in an effort to shield itself from liability. Each fails.

*First*, a vacatur by consent of portions of the so-called "SAVE Rule" does not render the rule void *ab initio* and, even if it did, does not foreclose the majority of Plaintiffs' claims, which are based on DOE directives independent of that rule. *Second*, Plaintiffs plead viable contract claims, and MOHELA cannot claim the DOE's immunity derivatively when it has contractually waived such immunity and failed to follow DOE directives. *Third*, MOHELA fails the test for state sovereign immunity, and is not the type of traditional governmental (as opposed to commercial) entity that might be immune under other state statutes. *Fourth*, Plaintiffs do not bring direct claims under the Higher Education Act ("HEA"), and MOHELA's attempt to mischaracterize them as such is unsupported by law. The Court should deny MOHELA's motion to dismiss in its entirety.

## II. ARGUMENT

### A. Plaintiffs State Valid Legal Bases for Their Claims.

MOHELA argues it can escape liability for all claims because the SAVE Rule was vacated. ECF No. 34 ("Mot") at 4–6. But vacatur of the SAVE Rule resulted from a negotiated settlement between certain states (including Missouri) and the DOE—not because a court deemed it void on the merits. MOHELA's argument that a consent vacatur of a regulation invalidates it retroactively finds no support in the law. Even if it did, such a vacatur could at most impact the First, Sixth, and Eighth Claims (the "SAVE Benefits" claims), the only claims based on the SAVE Rule.

#### 1. Most of Plaintiffs' Claims Do Not Rely on the SAVE Rule.

Two of Plaintiffs' contract claims and the corresponding state statutory claims are independent of the SAVE Rule and survive irrespective the consent vacatur. The Second, Fourth, and Ninth Claims (the "Application Processing" claims) stem from MOHELA's failure to process applications within 60 days, as required by DOE guidance, or to place borrowers in forbearance. Compl. ¶¶ 152–58. DOE directives to process applications and move borrowers into forbearance do not come from the SAVE Rule, but rather from regulations and directives issued to address litigation regarding the SAVE Rule that remain binding. *See* Compl. ¶ 152 n.41, ¶ 153 n.42. In addition, the Third, Fifth, Seventh, and Tenth Claims (the "Post-Stay Interest" claims) arise from MOHELA's failure, *after* the SAVE Rule was enjoined, to follow the DOE's directive to place affected borrowers into interest-free forbearance. Compl. ¶¶ 167–69, 174, 180–82. These claims are therefore not implicated by MOHELA's *ab initio* argument.

#### 2. Relevant Portions of the SAVE Rule Were Not Vacated.

While the district court in *Missouri v. Trump* (formerly *Missouri v. Biden*) vacated much of the SAVE Rule going forward, it explicitly declined to void "the provision concerning the

periods of deferment or forbearance that are eligible for income-driven repayment plans, which is codified at 34 C.F.R. § 685.209(k)(4)(iv)." *See Missouri v. Trump*, No. 4:24-cv-520-JAR (E.D. Mo.), Dkt. 102 at 1. This carve-out implicates part of the Application Processing claims because it grants income-driven repayment plan borrowers, including SAVE borrowers (*see* 34 C.F.R. § 685.209(a)), "a month of credit toward forgiveness" if they are on "[a]n administrative forbearance under § 685.205(b)(8) or (9) on or after July 1, 2024." 34 C.F.R. § 685.209(k)(4)(iv)(J).[1] Sections 685.205(b)(8) and (9), in turn, refer to the "processing forbearance" and "general forbearance" into which the Application Processing Class were supposed to be placed—and should have been placed—on or after July 1, 2024 if MOHELA had followed proper procedure. *See* Compl. ¶¶ 152–53, 152 n.41 (citing 34 C.F.R. § 685.205(b)(9)), 153 n.42 (citing DOE instructions regarding SAVE borrowers). Thus, even if MOHELA were correct (it is not) that these claims rely on the SAVE Rule and the consent vacatur in *Missouri* rendered the SAVE Rule void *ab initio*, the carve-out would still require denial of MOHELA's motion as to the Application Processing claims.

### 3. <u>The SAVE Rule Is Not Void *Ab Initio*.</u>

Despite these limitations, MOHELA asserts that all of Plaintiffs' claims fail because the SAVE Rule was "void *ab initio*." Mot. at 4–6. But this assertion rests on a fundamental mischaracterization of *Missouri v. Trump*, where no merits determination was made and the substantive issues relevant here were never addressed. In February 2025, the Eighth Circuit upheld the district court's *preliminary injunction*, concluding the state plaintiffs were "likely to

[1] Sections 685.205(b)(8) and (9) concern administrative forbearances in which "the Secretary grants forbearance without requiring documentation from the borrower," including in a "period during which the Secretary has authorized forbearance due to a . . . local or national emergency" or a "period of up to 60 days necessary for the Secretary to collect and process documentation supporting the borrower's request for a . . . change in repayment plan."

succeed in their claim that the Secretary's authority to promulgate ICR plans does not authorize loan forgiveness at the end of the payment period." *Missouri v. Trump*, 128 F.4th 979, 985 (8th Cir. 2025). A preliminary injunction, however, is not a ruling on the merits. *See Lackey v. Stinnie*, 604 U.S. 192, 201 (2025) ("[W]e have previously cautioned against improperly equating 'likelihood of success' with 'success' and treating preliminary injunctions as 'tantamount to decisions on the underlying merits.'" (citation modified)).

Following the Eighth Circuit's ruling, the parties reached a settlement and, on December 9, 2025, jointly asked the district court to enter a judgment vacating the SAVE Rule. *See* Compl. ¶ 5 n.1; *Missouri v. Trump*, No. 4:24-cv-520-JAR (E.D. Mo.), Dkt. 91. But a "judicial order vacating an agency rule does not *automatically* void every decision the agency made pursuant to that rule." *Am. Pub. Health Ass'n v. Nat'l Insts. of Health*, 145 F.4th 39, 50 (1st Cir. 2025) (citation modified). And, importantly, the settling parties did not ask the court to declare the SAVE Rule void *ab initio*. *Compare Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449, 455 (D.C. Cir. 1998) ("As a result of an agreement between the petitioners and EPA . . . both parties requested the court to issue an order declaring a provision of the final rule . . . to be 'vacated and void *ab initio*.'" (citation modified)). In *Missouri*, the federal government originally maintained its long-held position that the "Administrative Procedure Act (APA) does not authorize a court to vacate an agency rule," but in seeking entry of the stipulated vacatur agreed "not to pursue that argument further in this case." *Missouri v. Trump*, No. 4:24-cv-520-JAR (E.D. Mo.), Dkt. 91 at 3 n.1. The Eighth Circuit directed the district court to "enter the final judgment, as jointly requested by the parties." *Missouri v. Trump*, 2026 WL 696770, at *1 (8th Cir. Mar. 9, 2026). The district court then entered the parties' proposed order. *See Missouri v. Trump*, No. 4:24-cv-

520-JAR (E.D. Mo.), Dkt. 102.[2] The vacatur of the SAVE Rule was thus the product of a negotiated settlement, did not include language voiding the Rule, and was not the result of a ruling on the merits that the SAVE Rule was unconstitutional or otherwise unlawful.

None of MOHELA's authorities relied on a preliminary injunction finding of "likelihood of success on the merits" to hold a law void *ab initio*; instead, the laws at issue in those cases were *finally adjudicated* to be unconstitutional or otherwise invalid.[3] The cases MOHELA cites where courts vacated agency rules because the agency failed to take required steps in promulgating them were also final adjudicated merits determinations and are likewise distinguishable. *See United States v. Goodner Bros. Aircraft*, 966 F.2d 380, 384 (8th Cir. 1992) ("Because the EPA failed to follow the proper notice and comment procedures required under the Administrative Procedures Act, the court vacated the mixture rule."); *Sweda v. Upper Bucks Cnty. Tech. Sch.*, 2023 WL 5351980, at *10 (E.D. Pa. Aug. 18, 2023) (claim relied on an order issued by Health Secretary that Pennsylvania Supreme Court found to be void *ab initio* because agency rulemaking process was not followed); *see Corman v. Acting Sec'y of Pennsylvania Dep't of Health*, 671 Pa. 345, 401 (2021)). Here, there has been no finding (or even any

---

[2] A group of proposed intervenors filed a motion on March 16, 2026, requesting the court "amend its order by reversing the consent vacatur of the SAVE Final Rule and remanding the matter without vacatur, leaving any further modification of the rule to the notice-and-comment rulemaking process the APA requires." *Missouri v. Trump*, No. 4:24-cv-520-JAR (E.D. Mo.), Dkt. 107. The court has yet to rule. That is, not only has no court issued a final merits determination on the validity of SAVE Rule, but even the vacatur settlement is not final.

[3] *See, e.g.*, *Norton v. Shelby Cnty.*, 118 U.S. 425, 442 (1886); *Montgomery v. Louisiana*, 577 U.S. 190, 200-01 (2016); *Metzger Motor Car Co. v. Parrott*, 233 U.S. 36, 41 (1914); *McCoy v. Augusta Fiberglass Coatings, Inc.*, 593 F.3d 737, 744 (8th Cir. 2010); *Rodgers v. Mabelvale Extension Rd. Imp. Dist. No. 5 of Saline Cnty.*, 103 F.2d 844, 845 (8th Cir. 1939); *Geft Outdoor LLC v. Consol. City of Indianapolis & Cnty. of Marion, Indiana*, 187 F. Supp. 3d 1002, 1006-7 (S.D. Ind. 2016) (parties stipulated that "Court's ruling on . . . preliminary injunction should be consolidated with a final partial judgment on liability as to the First Amendment issues"); *Gary v. Spires*, 473 F. Supp. 878, 883 (D.S.C. 1979); *Legal Env't Assistance Found., Inc. v. U.S. E.P.A.*, 118 F.3d 1467 (11th Cir. 1997).

challenge) that the DOE failed to follow proper procedure in promulgating the SAVE Rule, no finding on any aspect of the SAVE Rule pertinent to the servicing claims at issue in this case, nor any other final merits determination about the Rule's validity.

#### 4. **MOHELA Agreed to Follow the SAVE Rule While in Effect.**

Even if the SAVE Rule was void *ab initio*, and to the limited extent Plaintiffs' claims depend on that rule, Plaintiffs have stated valid contract claims. Under the Servicing Contracts, MOHELA agreed to service loans in compliance with all applicable rules, laws, regulations, and guidelines. *See* Compl. ¶¶ 71–72, 76. The vacatur of the SAVE Rule by consent does not retroactively excuse MOHELA's failure to comply with its contractual obligations while the Rule remained in effect. To hold otherwise would create perverse incentives, whereby a loan servicer could ignore its contractual duties to follow governing law, on the hope that an existing law might someday be vacated. MOHELA's own authority acknowledges that is not the law. *See Norton*, 118 U.S. at 441 ("For the good order and peace of society [the] authority [of challenged officers] is to be respected and obeyed until, in some regular mode prescribed by law, their title is investigated and determined." (citation modified)).

MOHELA was obligated to follow DOE directives in servicing putative class members' loans. From July 30, 2023 until July 18, 2024, the SAVE Rule was applicable federal law. Compl. ¶¶ 93–95. The SAVE Benefits Class's claims stem from MOHELA's failure to automatically enroll REPAYE borrowers into the SAVE Plan, as that law required at that time. *See* Compl. ¶¶ 146–51. MOHELA was not free to ignore the Rule while it was in effect.

### B. **Plaintiffs State Cognizable Breach of Contract Liability Theories.**

Plaintiffs allege contractual breaches by MOHELA—of both the Servicing Contracts and Master Promissory Notes—as to each of the three proposed Classes. Compl. ¶¶ 291–323. Contrary to MOHELA's arguments, Plaintiffs have properly alleged MOHELA's obligations to

Plaintiffs and putative class members under both sets of agreements. Moreover, MOHELA is not entitled to derivative Eleventh Amendment immunity.

### 1. <u>Plaintiffs Are Third-Party Beneficiaries of the Servicing Contracts.</u>

As a party to the Servicing Contracts, MOHELA is liable to Plaintiffs and putative class members, as third-party beneficiaries, for its breaches of those agreements. Compl. ¶¶ 292–95, 303–06, 314–17. The interpretation of the Servicing Contracts is governed by federal common law. *See* Dkt. No. 1-1 ("DL Contract") § B.13(a)(3); Dkt. No. 1-2 ("USDS Contract") § II.I.1. Under such law, a party to a contract may be liable to a third-party beneficiary when "the contract reflects the express or implied intention of the parties to benefit the third party." *Audio Odyssey, Ltd. v. United States*, 255 F.3d 512, 521 (8th Cir. 2001) (citation omitted); *see also In re Express Scripts, Inc., PBM Litig.*, 2008 WL 2952787, at *8 (E.D. Mo. July 30, 2008). The third party "need not be specifically or individually identified in the contract, but must fall within a class clearly intended to be benefitted thereby." *Audio Odyssey*, 255 F.3d at 521 (quoting *Montana v. United States*, 124 F.3d 1269, 1273 (Fed. Cir. 1997)).

The Servicing Contracts include several provisions evidencing student loan borrowers are intended beneficiaries. *See* Compl. ¶¶ 71–73, 75–78. *First*, the stated objectives of the Servicing Contracts include servicing and management of "all types of Title IV student aid obligations," including the establishment of "repayment plans for borrowers across FSA-held Title IV Loans." DL Contract § C.1.3; USDS Contract § C.3(2).b.6; *see also* USDS Contract § I.C.1 (providing "continued servicing capabilities for FSA's student aid recipients"). The Servicing Contracts require MOHELA to "comply with all applicable Federal and State rules, laws, regulations, and Department guidelines." USDS Contract § I.C.3(1).d; *see also* DL Contract § C.1.4.3 (similar language), Attach. A-1 (citing a representative sample of applicable laws and regulations with which MOHELA is required to comply). Those rules, laws, regulations, and guidelines, in turn,

are focused in substantial part on assisting student loan borrowers. For example, in enacting the Student Loan Reform Act of 1993 to establish the federal Direct Loan Program (*see* Compl. ¶ 21), Congress desired to "provide borrowers with a variety of repayment plans . . . so that borrowers have flexibility in managing their student loan repayment obligations and so that these obligations do not foreclose community service-oriented career choices for them." H.R. Rep. No 103-111, at 112 (1993); *see also* 139 Cong. Rec. E1296-01 ("This issue . . . is about students and families and the best deal we can give them to help pay for their educations."). Likewise, in promulgating the SAVE Rule, the DOE sought to "create a stronger safety net for Federal student loan borrowers, helping more borrowers avert delinquency and default and the significant negative consequences associated with those events," "help low- and middle-income borrowers better afford their Federal loan payments," and "simplify the process of selecting a repayment plan." Improving Income Driven Repayment for the William D. Ford Federal Direct Loan Program and the Federal Family Education Loan (FFEL) Program, 88 Fed. Reg. 43820-01 (July 10, 2023).

*Second*, the Servicing Contracts repeatedly reference borrowers as the recipients (i.e., beneficiaries) of the services contemplated therein. For example, they obligate MOHELA to: (i) "support borrower benefit plans" (DL Contract Attach. A-2, line 3); (ii) "provide repayment plans for all loan types, including plans in existence prior to, and after, the Higher Education Reconciliation Act of 2005" (DL Contract Attach. A-2, line 9); (iii) "obtain daily deposit information from Treasury systems and . . . post payments to the borrower accounts on the same date of receipt" (DL Contract Attach. A-2, line 17); (iv) "prioritize borrower needs and preferences to deliver an improved borrower experience" (USDS Contract § I.C.3(1).c); (v) "implement an approach that minimizes risk and disruption to borrowers while deploying more

efficient and effective solutions" (USDS Contract § I.C.3(1).c); and (vi) for certain specialty servicing programs, "provid[e] borrowers with basic information about these programs; connect[] borrowers to resources . . . and process[] borrower account status changes, discharges, and forgiveness" (USDS Contract § I.C.3(1).h). In addition, the USDS Contract expressly states the intention to "[p]rovide all federally managed borrowers with complete account management capabilities on StudentAid.gov; [r]educe the disruption of account transfers; and [i]ncrease accountability for servicers via clear, measurable service-level agreements." USDS Contract § I.C.2. Moreover, the Servicing Contracts make clear that the allocation of borrower accounts (among the DOE's many servicers) is contingent on "borrower satisfaction with the servicer." DL Contract Attach. A-4; *see also* USDS Contract § I.C.3(1).m (reserving "the right to unilaterally shift current borrower accounts . . . when it is in the best interest of . . . its borrowers."). Taken together, these provisions demonstrate student loan borrowers were "clearly intended to be benefited" by the Servicing Contracts. *Audio Odyssey*, 255 F.3d at 521.

MOHELA asserts that student loan borrowers cannot be third-party beneficiaries solely because the Servicing Contracts do not explicitly designate them as such. *See* Mot. at 8–9. But such explicit language or magic words are unnecessary. *Audio Odyssey*, 255 F.3d at 521 (sufficient that contract "reflects the express or implied intention . . . to benefit the third party").[4] In support of its argument, MOHELA points to out-of-Circuit district court opinions (Mot. at 7–8), but numerous courts—including in this Circuit—have reached well-considered holdings recognizing that student loan borrowers are intended beneficiaries under similar circumstances.

[4] Nor does the USDS Contract's incorporation of 48 C.F.R. § 52.233-1 preclude Plaintiffs' status as third-party beneficiaries to that agreement. Section 52.233-1 sets forth certain procedural requirements pertaining to "claims" brought "by one of the contracting parties," but it neither references nor forecloses the claims of third-party beneficiaries.

*See, e.g.*, *Carr v. Oklahoma Student Loan Auth.*, 699 F. Supp. 3d 1241, 1250 (W.D. Okla. 2023); *Berman v. Pennsylvania Higher Educ. Assistance Agency*, No. 1:21CV63, 2022 WL 767530, at *6 (M.D.N.C. Mar. 14, 2022); *Johansson v. Nelnet, Inc.*, 2021 WL 1169409, at *6–9 (D. Neb. Mar. 26, 2021); *Olsen v. Nelnet, Inc.*, 392 F. Supp. 3d 1006, 1014–17 (D. Neb. 2019).

### 2. <u>Plaintiffs May Sue MOHELA as Partial Assignee to the Notes.</u>

Plaintiffs' allegations suffice to plead that MOHELA has contractual obligations under the Notes, as partial assignee, and may be sued for breaching the obligations it was assigned. *See, e.g.*, *Berman*, 2022 WL 767530, at *7–8; *Johansson*, 2021 WL 1169409 at *9–10; *Olsen*, 392 F. Supp. 3d at 1016–18. The assignment of performance of duties arising under a contract and acceptance by an assignee "constitutes a promise by [the assignee] to perform those duties." *Heinz v. Driven Auto Sales, LLC*, 603 S.W.3d 890, 896–97 (Mo. Ct. App. 2020). The promise, in turn, "is enforceable by . . . the other party to the original contract." *Id.* at 897. Whether the contract has been assigned is a fact issue that turns on the dealings of the alleged assignee and assignor and the language of the relevant contracts. *See Johansson*, 2021 WL 1169409, at *9; *GreatAmerica Leasing Corp. v. Dolan*, 2011 WL 334829, at *5 (D. Minn. Jan. 31, 2011).

Here, Plaintiffs allege they and putative class members entered into standard Notes with the DOE, which required the DOE to service loans in accordance with federal law and permitted the DOE to contract with loan servicers to perform certain obligations under the Notes, including the processing of student loan payments, deferment and forbearance requests, and other transactions. Compl. ¶¶ 40, 44, 296, 307, 318. As one such loan servicer, MOHELA serviced Plaintiffs' and putative class members' student loans pursuant to an assignment and/or delegation by the DOE of loan servicing rights and obligations under the Notes. Compl. ¶¶ 297–98, 308–09, 319–20.

### 3. <u>MOHELA Is Not Immune from Plaintiffs' Claims Under the Notes.</u>

Finally, MOHELA argues that if it is an assignee under the Notes, it is entitled to Eleventh Amendment immunity to the same extent as the federal government. Mot. at 10. This is not the law. The Supreme Court held in *Campbell-Ewald Co. v. Gomez* that federal contractors or assignees do not "share the Government's unqualified immunity from liability and litigation." 577 U.S. 153, 166 (2016).[5] MOHELA cannot "stand in the ED's shoes" (Mot. at 11): federal contractors may be shielded from liability by derivative immunity only when they strictly follow government directions, which Plaintiffs allege MOHELA did not. *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 22 (1940). When a contractor exercises discretion and "violates both federal law and the Government's explicit instruction," as Plaintiffs allege here, "no 'derivative immunity' shields the contractor from suit by persons adversely affected by the violation." *Campbell-Ewald Co.*, 577 U.S. at 166; *Nigro v. Pennsylvania Higher Educ. Assistance Agency*, 2020 WL 5369980, at *6 (M.D. Pa. Sept. 8, 2020) (no derivative sovereign immunity where "servicer violated federal law and violated its contractual obligations as a servicer of [plaintiff's] federal student loans"); *James v. PHEAA*, 2020 WL 2097640, at *5–8 (S.D.N.Y. May 1, 2020) (same); *see also GEO Group, Inc. v. Menocal*, 146 S. Ct. 774, 786 (2026) (holding that derivative sovereign immunity is a merits defense, not true immunity).

Moreover, in the USDS Contract, MOHELA explicitly "acknowledges that any claim or

[5] MOHELA implicitly concedes that under applicable standards—including the Supreme Court's recent decision in *Galette v. New Jersey Transit Corp*, 146 S.Ct. 854 (2026)—MOHELA's independence from the State of Missouri excludes it from Eleventh Amendment immunity. MOHELA recently withdrew this argument in *Joy, et al. v. MOHELA*, No. 4:23-cv-01590-ZMB (E.D. Mo.), Dkt. 68. Further, despite MOHELA's frequent and misleading references, *Biden v. Nebraska* only helps Plaintiffs on the analysis of sovereign immunity. At oral argument, the United States Solicitor General argued that MOHELA is not "'an arm of the state for sovereign immunity' because of the differing 'critical factors' between an inquiry into standing versus sovereign immunity." *Pelligrino v. Equifax Info Servs., LLC*, 709 F. Supp. 3d 206, 212 (E.D. Va. 2024) (quoting transcript of *Biden v. Nebraska* oral argument).

defense of Sovereign Immunity or Qualified Immunity is not applicable to work performed under the Contract and any Task Order issued under the Contract." USDS Contract § I.C.3(1).q. Because its obligations under the Notes are coextensive with work performed under the Servicing Contracts, MOHELA has expressly waived immunity as to the Notes. Another district court recently allowed servicing-related claims to proceed against MOHELA where, as here, MOHELA had contractually "waived any claim of derivative immunity" and failed to distinguish what conduct it claimed was outside the scope of its broad immunity waiver. *Maldonado v. Higher Educ. Loan Auth. of the State of Missouri*, 2025 WL 1085105, at *2 (N.D. Cal. Apr. 9, 2025). *Maldonado* concerned the very same Servicing Contracts at issue here. *See* USDS Contract § I.C.3(1).q. Because "by entering into the Servicing Contracts with the Department of Education, MOHELA accepted assignment of loan servicing rights and obligations set forth in the [Notes]" (Compl. ¶¶ 297, 308, 319), MOHELA's express contractual waiver of immunity applies to its liability under the Notes.

MOHELA cannot claim derivative immunity for the additional reason *that the DOE itself* has expressly waived sovereign immunity under 20 U.S.C. § 1082(a)(2) of the HEA. MOHELA's authority, *Witz*, fails to acknowledge, let alone distinguish, binding Supreme Court precedent in *Campbell-Ewald* greatly limiting the scope of derivative immunity, and cites no authority in support of its application of an incorrect framework. *See Witz v. Great Lakes Educ. Loan Servs., Inc.*, 752 F. Supp. 3d 980, 986 (N.D. Ill. 2024). And further, the loan servicer's contractual waiver of immunity, as MOHELA did here, was not raised in *Witz*. *See id.*

**C. <u>Plaintiffs State Cognizable State Statutory Claims.</u>**

**1. <u>MOHELA Is Not Entitled to State Sovereign Immunity.</u>**

Because MOHELA is not a purely governmental entity, the state statutes Plaintiff plead apply and subject MOHELA to liability. MOHELA insists that it "is indisputably a Missouri

public entity." Mot. at 12, 17. But a "hybrid entity" like MOHELA, which is neither clearly public nor clearly private, is evaluated under the three-part test established in *Stacy v. Truman Med. Ctr.*, 836 S.W.2d 911, 919 (Mo. 1992) (en banc), *abrogated on other grounds by Southers v. City of Farmington*, 263 S.W.3d 603 (Mo. 2008). To enjoy immunity, MOHELA must: (1) perform a service traditionally performed by the government; (2) be controlled by and directly answerable to one or more public officials, public entities, or the public itself; *and* (3) have been formed by the government. *Id.* MOHELA fails to satisfy the first and second requirements.

*First*, and "most critical," MOHELA is not "controlled by *and* directly answerable to one or more public officials, public entities, or the public itself." *Stacy*, 836 S.W.2d at 919 (emphasis added). This requirement "reflects a policy that a hybrid entity should not be afforded sovereign immunity protection unless the hybrid entity is meaningfully controlled by and accountable to the sovereign whose immunity it seeks to appropriate." *Estes as Next Friend for Doe v. Bd. of Trs. of Missouri Pub. Entity Risk Mgmt. Fund*, 623 S.W.3d 678, 696–897 (Mo. Ct. App. 2021). Relevant factors include "who has the authority to manage and operate the entity; how those with the authority . . . are selected; the extent to which the entity has reporting obligations to the government or the public; and whether reporting obligations foster accountability to the government or the public." *Id.* The "controlled by" and "directly answerable to" prongs of this requirement are "distinct and have different meanings": when a hybrid entity's governing board consists of "public officials or public entities, it does not necessarily follow that the hybrid entity is 'directly answerable to' public officials, public entities, or the public." *Bank of Washington v. Land Clearance for Redev. Auth. of City of St. Louis*, 726 S.W.3d 23, 30 (Mo. Ct. App. 2025) (quoting *Estes*, 623 S.W.3d at 697) (citation modified).

Numerous courts have examined MOHELA's degree of autonomy over its own affairs

and concluded that MOHELA is neither controlled by, nor answerable to, the State of Missouri or the public. For example, Missouri made MOHELA "a financially independent entity with expansive powers," the State has "no veto power over MOHELA's regular activities," and it requires "nothing more than filing annual reports, a requirement that applies to any stock corporation." *Pelligrino*, 709 F. Supp. 3d at 217; *see also White v. Missouri Higher Educ. Loan Auth.*, 2025 WL 20580, *5 (M.D. Fla. 2026) (annual financial reporting requirement is not dispositive of state control); *Coffey v. Higher Educ. Loan Auth.*, 770 F.Supp.3d 1332, 1345 (M.D. Fla. 2025) (annual reporting "is primarily a ministerial requirement that does not demonstrate actual control by the State"). In addition, "the express financial segregation of MOHELA from any state funds, and the lack of any obligation for the State to pay MOHELA's debts, 'strongly' weigh against an application of sovereign immunity." *Perkins v. Equifax Info. Servs., LLC*, 2020 WL 13120600, at *4 (W.D. Tex. 2020). *See also Good v. U.S. Dep't of Educ.*, 121 F.4th 772, 811 (10th Cir. 2024) (MOHELA's authority to issue bonds is not subject to State review or procedures); *White*, 2025 WL 20580, at *6 (nothing indicates that MOHELA's revenue-generating powers are subject to executive oversight or legislative review); *Coffey*, 770 F. Supp. 3d at 1345 (MOHELA's funding supports the conclusion that it is not an arm of the State). Moreover, while the Governor appoints some (but not all) MOHELA board members, other aspects of MOHELA's leadership—that the board members "serve longer terms than the state officer who appoints them," the board members select an outside individual to serve as the "executive director" with authority to direct and staff MOHELA, and the board appoints the rest of its leadership (including chairman, vice chairman, secretary, and treasurer)—support the conclusion that Missouri holds no meaningful level of control over MOHELA. *White*, 2025 WL 20580, at *5 ("the power to appoint is not the power to control") (quoting *Coffey*, 770 F. Supp.

3d at 1344, and citing Mo. Stat. §§ 173.360, 173.370.1, 173.370.2) (citation modified).

*Second*, MOHELA does not perform a service traditionally performed by the government. *Stacy*, 836 S.W.2d at 919. Traditional government services include, *inter alia*, the "provision of a criminal justice database," "metropolitan transportation," and "medical care." *Id.*; *Estes*, 623 S.W.3d at 692. By contrast, student loan servicing is traditionally performed by private entities; indeed, the DOE's other student loan servicers are all private companies.[6] *See, e.g.*, *Neagle v. Goldman Sachs Grp., Inc.*, 2019 WL 1102199, at *1 (D. Or. Mar. 1, 2019) ("Traditionally, banks serviced loans themselves."); *Castro v. Kentucky Higher Educ. Student Loan Corp.*, 2017 WL 588379, at *1, 9 (S.D. Fla. Feb. 14, 2017) (holding "student loan servicing company created by Kentucky's General Assembly" "performs a function traditionally within the purview of *private corporations*, not the state" (emphasis added)); *Gaffney v. Kentucky Higher Educ. Student Loan Corp.*, 2016 WL 3688934, at *9 (M.D. Tenn. July 12, 2016).

Moreover, while cases rejecting MOHELA's Eleventh Amendment immunity claims are not binding on the issue of state sovereign immunity, they are nonetheless instructive as many of the pertinent factors overlap with the *Stacy* factors, including the extent to which MOHELA is independent from the State. *See Good*, 121 F.4th at 811–12; *White*, 2025 WL 20580, at *5; *Coffey*, 770 F.Supp.3d at 1344–45; *Walker v. MOHELA*, 2024 WL 3568576, at *7 (E.D. Cal. 2024) (MOHELA has "significant independent authority to engage in business dealing without prior approval or subsequent veto power by the State").

MOHELA's reliance on *Dykes v. Missouri Higher Education Loan Authority*, 2021 WL 3206691 (E.D. Mo. 2021), is misplaced. There the court granted MOHELA's motion for

---

[6] Edfinancial, Aidvantage, Nelnet, ECSI, Default Resolution Group, and CRI are all private entities. Who's My Student Loan Servicer? Identifying Your Servicer, https://studentaid.gov/manage-loans/repayment/servicers.

judgment on the pleadings, but the plaintiff had failed to raise, and had therefore waived, several relevant, dispositive factors that, respectfully, would very likely have changed the outcome of the case. *Id.* MOHELA cites *Mermigas v. Higher Education Loan Authority*, 2025 WL 2576745 (N.D. Ill. 2025), which did not apply the relevant *Stacy* test. MOHELA also misapplies *Franchise Tax Bd. of California v. Hyatt*, 578 U.S. 171 (2016) ("*Hyatt II*"); here, because MOHELA fails to establish its immunity, no other state faces imposing liability against it in conflict with its own statute.

**2. <u>The FDUTPA Applies to MOHELA and Its Loan Servicing Activity.</u>**

MOHELA and its loan servicing activity are both covered by the FDUPTA. MOHELA is not immune from liability under the FDUTPA because it is not a traditional "governmental entity of Missouri" (*see* Mot. at 12) for the reasons discussed *supra*. MOHELA's authorities are distinguishable because they concern state-run government agencies performing traditional government services. *See Curcio v. State Dep't of Lottery*, 164 So.3d 750, 754 (Fla. Dist. Ct. App. 2015) (Florida Lottery); *DBI Servs. LLC v. Shorter*, 2017 WL 11629340, at *1 (N.D. Fla. 2017) (Florida Department of Transportation).

Further, Plaintiffs' claims of servicing misconduct fall within the purview of the FDUTPA. Loan servicing is "trade or commerce" when loan servicers engage in "unauthorized activities," as MOHELA is alleged to have done here. *See, e.g.*, *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1324 (S.D. Fla. 2014) (upholding claims servicer exceeded the scope of its legal entitlement and charged for services "which were unauthorized and . . . never performed"); *Manetta v. Navient Corp.*, 2021 WL 2886115, at *4 (D.N.J. July 8, 2021) (upholding claims "Defendants made a variety of misrepresentations to Plaintiffs" which "led to [them] paying more in interest . . . than was contractually required"). MOHELA's cited cases—concerning mortgage servicers that "merely obtained a legal interest in a mortgage note from a third party

lender and proceeded to take efforts to enforce the terms of that mortgage"[7]—are inapposite. Accordingly, MOHELA is subject to FDUTPA.

**3. The NYGBL Applies to MOHELA.**

Plaintiffs also state viable claims for violations of NYGBL § 349. MOHELA claims it is a governmental entity that is not considered a "person" under NYGBL § 349. That argument rests on a misreading of *Walton v. New York State Department of Corrective Services*, which actually states that the statute "does not apply to a state administrative agency *performing governmental functions*." 808 N.Y.S.2d 483, 486 (App. Div. 2006) (emphasis added). As discussed *supra*, MOHELA's servicing of student loans is primarily and traditionally performed by private companies and, therefore, not a governmental function akin to the correctional services at issue in *Walton*. *See Polotensky v. Better Homes Depot, Inc.*, 97 N.Y.2d 46 (Ct. App. 2001).

Also distinguishable is *Leonard v. Masterson*, 896 N.Y.S.2d 358, 360 (App. Div. 2010), which concerned New York's Highway Law—unlike the Highway Law, NYGBL § 349 expressly authorizes claims against "any person, including but not limited to an individual, firm, corporation, company, partnership or association, or agent or employee thereof," and is "intentionally broad, applying to virtually all economic activity." Courts evaluating government immunity assertions for NYGBL claims focus on whether "the business of the corporation is so closely linked with State functions as to be essentially the state itself." *Bell v. New York Higher Educ. Assistance Corp.*, 138 Misc.2d 932, 933 (N.Y. Sup. Ct. 1987) (quoting *Belscher v. New York State Tchrs. Ret. Sys.*, 45 A.D.2d 206, 208 (N.Y App. Div. 1974)). The answer is no for

---

[7] *Rodriguez v. Ocwen Fin. Corp.*, 2017 WL 3593972, at *6 (S.D. Fla. 2017); *see also Benjamin v. CitiMortgage, Inc.*, 2013 WL 1891384, at *5 (S.D. Fla. 2013); *Jean-Jacques v. Shellpoint Mortg. Servicing*, 2021 WL 8894470, at *2 (S.D. Fla. 2021); *Genao v. CitiMortgage, Inc.*, 2017 WL 10775439, at *4–5 (S.D. Fla. 2017).

MOHELA and the State of Missouri. In fact, courts have routinely permitted statutory claims based on loan servicing activity like that alleged here. *See*, *e.g.*, *Pandit v. Saxon Mortg. Servs., Inc.*, 2012 WL 4174888, at *6 (E.D.N.Y. 2012) (permitting claim where servicer performed "what is fairly read to be a series of steps designed to string along loan modification applicants" and "took steps to delay deciding on applicants' permanent loan modifications").

MOHELA's assertion that it is shielded from liability because its conduct did not occur in New York also fails. Here, in contrast to *Goshen v. Mutual Life Insurance Company of New York*, 98 N.Y.2d 314, 324 (2002), the "transaction" and "deception" both occurred in New York for the New York subclasses (i.e., MOHELA failing to properly administer the SAVE Plan for loans it serviced for consumers in New York), all of whom experienced MOHELA's servicing failures within the State (unlike the plaintiffs in *Goshen* who were residents of and purchased insurance plans in Florida; *id.* at 325–26). MOHELA is not immune from NYGBL claims.

**4. <u>The WCPA Applies to MOHELA.</u>**

MOHELA's attempt to avoid WCPA liability also fails. MOHELA's authorities, including *Washington Natural Gas Co. v. Public Utility District No. 1 of Snohomish County.*, 459 P.2d 633 (Wash. 1969) (en banc), and its progeny, are inapposite because MOHELA is neither a municipal corporation nor a political subdivision.[8] MOHELA's status as a Missouri public corporation is not dispositive. MOHELA operates as a commercial enterprise rather than a governmental entity, servicing student loans nationwide in the same fashion as the private

[8] In most of MOHELA's cited cases, the plaintiffs conceded, or the court held, that defendants were municipal corporations. *See Haberman v. Washington Pub. Power Supply Sys.*, 744 P.2d 1032, 1071–72 (Wash. 1987); *Witham v. Clallam Cnty. Pub. Hosp. Dist. 2*, 2009 WL 3346041, at *5-7 (W.D. Wash. Oct. 15, 2009); *Sauk-Suiattle Indian Tribe v. City of Seattle*, 525 P.3d 238, 241–42 (Wash. Ct. App. 2023); *Leahy v. Edmonds Sch. Dist.*, 2008 WL 11508397, at *8 (W.D. Wash. Nov. 10, 2008); *Keenan v. Allan*, 889 F. Supp. 1320, 1383 (E.D. Wash. 1995). Here, Plaintiffs make no such concession. MOHELA is not a municipal corporation, city, county, or local district entity.

companies that are similarly contracted by the DOE. *Ottgen* is likewise distinguishable: unlike MOHELA, the technical college defendant in *Ottgen* "is part of the Washington Community and Technical College System and is supervised by the College Board, both of which are political subdivisions of the State of Washington." *Ottgen v. Clover Park Tech. Coll.*, 928 P.2d 1119, 1122 (Wash. Ct. App. 1996).

### D. Plaintiffs Do Not Seek to Enforce the Higher Education Act.

Finally, MOHELA incorrectly argues that all of Plaintiffs' claims seek relief under the HEA, requiring dismissal. Mot. at 18–20. In fact, all of Plaintiffs' claims are based on state statutory law or common law—*not* the HEA. Thus, the cases MOHELA relies upon are inapposite.[9] Nor does the DOE's "exclusive authority to enforce the HEA" (Mot. at 19) preclude Plaintiffs' claims. *See Coll. Loan Corp. v. SLM Corp.*, 396 F.3d 588, 599 (4th Cir. 2005) (DOE's "exclusive authority . . . does not, standing alone, mandate the conclusion that a state law claim which relies on HEA violations for support 'obstructs' the federal scheme.").

MOHELA's liability here does not arise from a violation of the HEA. Rather, as alleged, MOHELA expressly agreed or accepted an assignment of obligations to comply with federal laws, regulations, and guidance. MOHELA then breached its contractual obligations and committed unfair and deceptive practices in violation of state laws. At least one court in this Circuit rejected an argument similar to MOHELA's, holding that a breach of contract claim against a student loan servicer was not "a cause of action to enforce the Higher Education Act's regulations," and thus was not barred by the lack of a private cause of action under the HEA. *Olsen*, 392 F. Supp. 3d at 1015 (characterizing defendant's argument as "a bit of a straw man");

[9] *See Labickas v. Arkansas State Univ.*, 78 F.3d 333, 334 (8th Cir. 1996) (affirming dismissal of HEA claim with prejudice while modifying dismissal of pendent state law claims to be without prejudice); *Kuku v. Capella Univ.*, 2025 WL 3089558, at *1 (D. Minn. Nov. 5, 2025) (dismissing standalone HEA claim).

*see also Johansson*, 2021 WL 1169409, at *6 ("[P]laintiffs' claims concern whether the Department's regulations, which are incorporated as contract terms, have been breached.").

MOHELA's reliance on *Astra USA, Inc. v. Santa Clara County* is misplaced. 563 U.S. 110 (2011). There, the operator of healthcare facilities covered by Section 340B of the Public Health Services Act sued several pharmaceutical manufacturers for charging the facilities in excess of certain ceiling prices set by the Department of Health and Human Services ("HHS"). *Id.* at 113. The facilities asserted breach of contract claims, alleging that they were third-party beneficiaries of so-called Pharmaceutical Pricing Agreements ("PPAs") entered into between each overcharging manufacturer and HHS. *Id.* The Supreme Court dismissed the facilities' claims, observing that the PPAs are "uniform agreements that recite the responsibilities § 340B imposes"—"not transactional, bargained-for contracts" with "negotiable terms" *Id.* at 113, 118. Here, the Servicing Contracts are not the type of contracts stemming from a centralized pricing program as in *Astra*. *See id.* at 113. Rather, they reflect solicited, bargained-for terms governing the servicing of student loans, which were agreed to between MOHELA and the DOE. As explained above, the lack of a private right to enforce the HEA does not foreclose enforcement of an independent agreement by MOHELA to abide by regulatory directives. *See Olsen*, 392 F. Supp. 3d at 1015–16 (*Astra* does not preclude suit by borrowers to enforce student loan servicing agreement as third-party beneficiaries).

## III. <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny MOHELA's motion in its entirety. Should the Court grant the motion, in part or in whole, Plaintiffs request leave to amend.

Dated: April 17, 2026

Respectfully submitted,

*/s/ Roger N. Heller*

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Roger N. Heller, 215348 (CA) (*pro hac vice*)
Katherine Lubin Benson, 259826 (CA) (*pro hac vice*)
Michael K. Sheen, 288284 (CA) (*pro hac vice*)
Annie M. Wanless, 339635 (CA) (*pro hac vice*)
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
rheller@lchb.com
kbenson@lchb.com
msheen@lchb.com
awanless@lchb.com

PAUL LLP
Richard M. Paul III, 44233 (EDMO)
Megan M. Duffield, 76886 (MO)
600 Broadway Boulevard, Suite 600
Kansas City, Missouri 64105
Telephone: (816) 984-8100
Rick@PaulLLP.com
Megan@PaulLLP.com

BERMAN TABACCO
Nathaniel L. Orenstein, 664513 (MA) (*pro hac vice*)
Justin N. Saif, 660679 (MA) (*pro hac vice*)
One Liberty Square
Boston, MA 02109
Telephone: 617.542.8300
norenstein@bermantabacco.com
jsaif@bermantabacco.com

Caitlyn M. Barresi, 357977 (CA) (*pro hac vice*)
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: 415.433.3200
cbarresi@bermantabacco.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 17, 2026, the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to registered parties.

*/s/ Roger N. Heller*

3460897.8