UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JONATHAN GIBBS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI,<br><br>Defendant. | ) | Case No. 4:26-cv-00030-ZMB |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

**1. Plaintiffs' claims fail because the SAVE Rule was void ab initio and has been vacated.**

**a. The invalid SAVE Rule conferred no rights and imposed no obligations.**

Plaintiffs cannot recover against MOHELA because the Save Rule was void ab initio, has been vacated, "confers no rights," "imposes no duties," and is "in legal contemplation, as inoperative as though it had never been passed." *Norton v. Shelby Cnty.*, 118 U.S. 425, 442 (1886); *see also Montgomery v. Louisiana*, 577 U.S. 190, 204 (2016); *Metzger Motor Car Co. v. Parrott*, 233 U.S. 36, 40-42 (1914); *McCoy v. Augusta Fiberglass Coatings, Inc.*, 593 F.3d 737, 743-44 (8th Cir. 2010); *United States v. Goodner Bros. Aircraft*, 966 F.2d 380, 384-85 (8th Cir. 1992); *Rodgers v. Mabelvale Extension Rd. Imp. Dist. No. 5 of Saline Cnty.*, 103 F.2d 844, 846-47 (8th Cir. 1939); *Legal Env't Assistance Found., Inc. v. U.S. E.P.A.*, 118 F.3d 1467, 1473 (11th Cir. 1997). Plaintiffs fail to address these authorities.

It is immaterial that the Eighth Circuit's decision in *Missouri v. Trump*, 128 F.4th 979 (8th Cir. 2025), resulted in a preliminary injunction instead of a final judgment. The Eighth Circuit explained why the SAVE Rule was invalid, *id.* at 991-95, the ED agreed that the SAVE Rule was "illegal" (the ED's own words), and Plaintiffs make no attempt to defend the rule's validity.

The Eighth Circuit directed this Court to enter a final judgment vacating the rule, as the ED requested. It is immaterial that the ED "did not [also] ask the court to declare the SAVE Rule void *ab initio*." Pls.' Opp. at 4. The vacatur of the rule, standing alone, renders it "a nullity that has no force and effect" "and restores the status quo before the invalid rule took effect." *Hallman v. Flagship Rest. Grp., LLC*, 762 F. Supp. 3d 830, 841 (D. Neb. 2025) (quotations omitted).

Plaintiffs contend that "a 'judicial order vacating an agency rule does not *automatically* void every decision the agency made pursuant to that rule.'" Pls.' Opp. at 4 (quoting *Am. Pub. Health Ass'n v. Nat'l Insts. of Health*, 145 F.4th 39, 50 (1st Cir. 2025)).[1] This argument is wide of the mark. The *ED* never made any decisions as to Plaintiffs pursuant to the SAVE Rule. To the contrary, Plaintiffs' complaint is that *MOHELA* did not make any decisions as to Plaintiffs under the rule. Plaintiffs cannot force MOHELA to make such decisions now because the rule has been vacated, Plaintiffs never had any rights under it, and MOHELA never had any obligations under it. Plaintiffs cite no cases in which a defendant was found subject to liability under a law known to be invalid. The Court, therefore, should dismiss the Complaint.

**b. MOHELA was never required to follow the invalid SAVE Rule.**

Plaintiffs insist that MOHELA was required to follow the SAVE Rule from July 30, 2023, until July 18, 2024, because "the SAVE Rule was applicable federal law" "at that time" and "[u]nder the Servicing Contracts, MOHELA agreed to service loans in compliance with all applicable rules, laws, regulations, and guidelines." Pls.' Opp. at 6. But the SAVE Rule was never an applicable rule, law, or regulation because it was void ab initio.

[1] Plaintiffs reliance on *Am. Publ Health Ass'n* is puzzling because the court of appeals held that the district court was likely correct in vacating: (a) a new federal agency policy prohibiting the funding of scientific research grants in certain categories; and (b) all grant terminations pursuant to the invalid new policy. 145 F.4th at 48-54.

**c. All of Plaintiffs' claims stem from the invalid SAVE Rule.**

Plaintiffs incorrectly assert that "most" of their claims "do not rely on the SAVE Rule." Pls.' Opp. at 2. They claim that Counts 2, 4, and 9 "stem from MOHELA's failure to process applications within 60 days, as required by DOE guidance, or to place borrowers in forbearance." *Id.* But the applications that MOHELA allegedly failed to process, and the related forbearances MOHELA allegedly failed to implement, were *under the SAVE Rule*. ED guidance pursuant to an invalid rule is ineffective. Because the SAVE Rule was void ab initio, Plaintiffs were never entitled to have their SAVE applications processed and were not entitled to any forbearances.

Plaintiffs also contend that Counts 3, 5, 7, and 10 "arise from MOHELA's failure, *after* the SAVE Rule was enjoined, to follow the DOE's directive to place affected borrowers into interest-free forbearance." *Id.* at 2 (italics in original). But Plaintiffs cannot enforce an alleged ED directive stemming from the invalid SAVE Rule.

**d. The remaining portion of the SAVE Rule does not apply to Plaintiffs.**

Plaintiffs assert that they still have claims under the one portion of the SAVE Rule that was not vacated, 34 C.F.R. § 685.209(k)(4)(iv), which provides that "[f]or all IDR plans, a borrower receives a month of credit toward forgiveness by … [d]eferring or forbearing monthly payments under the following provisions … (J) An administrative forbearance under § 685.205(b)(8) or (9) on or after July 1, 2024." While this provision was not vacated, it does not apply to Plaintiffs for two reasons. First, the provision applies to "IDR plans," and the Save Plan was never a valid IDR plan (and any ED guidance thereunder was not effective). Second, federal statutes have never allowed for loan forgiveness under any IDR plan except for the income-based repayment (IBR) plan established by 20 U.S.C. §§ 1087e(d)(1)(E) and 1098e. *Missouri*, 128 F.4th at 992-94. Thus, any loan forgiveness credits could only apply to borrowers in the IBR plan.

Plaintiffs have never been in the IBR plan—they applied for the SAVE Plan—and, thus, they have never been eligible for any loan forgiveness credits under 34 C.F.R. § 685.209(k)(4)(iv).

**2. Plaintiffs' contract claims (Count 1-3) fail because: (a) MOHELA does not owe any obligations to Plaintiffs under the Servicing Contracts or the Notes; and (b) the ED's sovereign immunity bars Plaintiffs' claims under the Notes.**

**a. Plaintiffs are not third-party beneficiaries of the Servicing Contracts.**

Plaintiffs' contract claims (Counts 1-3) fail because they are not third-party beneficiaries of the Servicing Contracts between MOHELA and the ED. The vast majority of courts to decide the issue have held that student loan borrowers such as Plaintiffs are *not* third-party beneficiaries of the ED's servicing contracts with servicers such as MOHELA. *See Witz v. Great Lakes Educ. Loan Servs., Inc.*, 752 F. Supp. 3d 980, 986-88 (N.D. Ill. 2024); *Wade v. Pennsylvania Higher Educ. Assistance Agency*, No. CV 21-11595 (CPO), 2022 WL 1115275, at *2-3 (D.N.J. Apr. 14, 2022); *Edelman v. United States Gov't*, No. 18-CV-2143(JS)(AKT), 2020 WL 7123175, at *11 (E.D.N.Y. Dec. 4, 2020); *Travis v. Navient Corp.*, 460 F. Supp. 3d 269, 284 (E.D.N.Y. 2020); *Love v. Pennsylvania Higher Educ. Assistance Agency*, No. 1:19-CV-02387-JPB, 2020 WL 1545798, at *8 (N.D. Ga. Mar. 16, 2020); *Hyland v. Navient Corp.*, No. 18CV9031(DLC), 2019 WL 2918238, at *8 (S.D.N.Y. July 8, 2019); *Winebarger v. Pennsylvania Higher Educ. Assistance Agency*, 411 F. Supp. 3d 1070, 1092, n.13 (C.D. Cal. 2019)).[2] Plaintiffs simply ignore these cases.

Instead, Plaintiffs cite four decisions (two of which are from the same judge) to support their contention that "numerous courts … have reached well-considered holdings recognizing that student loan borrowers are intended beneficiaries under similar circumstances." Pls.' Opp. at 9 (citing *Carr v. Oklahoma Student Loan Auth.*, 699 F. Supp. 3d 1241, 1250 (W.D. Okla. 2023), *Berman v. Pennsylvania Higher Educ. Assistance Agency*, No. 1:21CV63, 2022 WL 767530, at

[2] This Court and the Eighth Circuit have not yet addressed this issue.

*6 (M.D.N.C. Mar. 14, 2022); *Johansson v. Nelnet, Inc.*, No. 4:20-CV-3069, 2021 WL 1169409, at *7-8 (D. Neb. Mar. 26, 2021) (Gerrard, J.), and *Olsen v. Nelnet, Inc.*, 392 F. Supp. 3d 1006, 1014-16 (D. Neb. 2019) (Gerrard, J.)). These cases are inapposite or were incorrectly decided.

*Carr* did not involve a federal government contract with the ED; instead, it arose under a private contract between two servicers (Nelnet and OSLA). 699 F. Supp. 3d at 1250. In Plaintiffs' other cases, the courts erroneously applied *state law* to conclude that the borrowers were third-party beneficiaries and had viable *state law* contract causes of action based on the ED's *federal* servicing contracts. *Berman*, 2022 WL 767530, at *6 (applying North Carolina law); *Olsen*, 392 F. Supp. 3d at 1014-16 (applying Nebraska law); *Johansson*, 2021 WL 1169409, at *7-8 (same). These cases are contrary to the Eighth Circuit's directive that federal common law, not state law, determines third-party beneficiary status under a federal government contract. *Audio Odyssey, Ltd. v. United States*, 255 F.3d 512, 520 (8th Cir. 2001). As Plaintiffs concede, "[t]he interpretation of the Servicing Contracts is governed by federal common law," Pls.' Opp. at 7, and the Servicing Contracts expressly incorporate 48 C.F.R. § 52.233-4, which states that "United States law will apply to resolve any claim of breach of this contract."

Plaintiffs fail to address the fact that the Higher Education Act ("HEA") provides no private right of action and empowers only the Secretary of Education to enforce it. The absence of such a private right of action defeats Plaintiffs' attempt to enforce the HEA indirectly through a third-party beneficiary breach of contract claim. *Astra USA, Inc. v. Santa Clara Cnty.*, 563 U.S. 110, 114-22 (2011). Under *Astra*, "a suit to enforce an agreement that incorporates statutory obligations is in essence a suit to enforce the statute itself." *United/Xcel-RX, LLC v. Express Scripts, Inc.*, No. 4:19-CV-00221-SRC, 2019 WL 5536806, at *5 (E.D. Mo. Oct. 25, 2019) (quotation omitted).

Plaintiffs also point to no language in the Servicing Contracts evidencing an intent to make student loan borrowers third-party beneficiaries with rights of enforcement. Plaintiffs contend that "the stated objectives of the Servicing Contracts include servicing and management of all types of Title IV student aid *obligations*, including the establishment of *repayment plans for borrowers* across FSA-held Title IV loans." Pls.' Opp. at 7 (emphasis added) (quotations and citations omitted). The very purpose of the Servicing Contracts is to service the borrowers' loan *obligations* to the ED. MOHELA performs such servicing on behalf of and for the benefit of the ED, not the borrowers, by, among things, administering the ED's repayment plans and receiving and posting borrower payments. While the ED wants borrowers to be satisfied with their student loan "experience," and the servicers may play a role in that, that goal does not transform borrowers into third-party beneficiaries.

The ED and MOHELA knew how to provide for third-beneficiary rights when they so intended. The DL Contract includes express third-party beneficiary rights, but only with respect to certain intellectual property issues. Compl. Ex. A, ECF PageID #89, Paragraph B.9(c). There are no similar express third-party beneficiary rights related as to student loan borrowers because the ED and MOHELA never intended for borrowers to be third-party beneficiaries. *See Travis*, 460 F. Supp. at 284.

Plaintiffs also brush off the fact that the USDS Contract expressly addresses and allows for potential contract claims only by the ED or MOHELA. Compl. Ex. B, Page ID#192 (incorporating 48 C.F.R. § 52.233-1). If the ED and MOHELA had intended for borrowers to be third-party beneficiaries, they would have also addressed and allowed for potential contract claims by borrowers. They did not do so because they never intended for borrowers to be third-party beneficiaries. The Court should dismiss Counts 1-3.

**b. Plaintiffs' own allegations defeat their claim that the ED "partially assigned" the Notes to MOHELA.**

For Counts 1-3, Plaintiffs insist that they sufficiently "plead that MOHELA has contractual obligations under the Notes, as partial assignee, and may be sued for breaching the obligations it was assigned." Pls.' Opp. at 10. Yet, Plaintiffs point to no documents evidencing any such "partial assignment" of the Notes to MOHELA. Indeed, there are no such documents.

Even so, MOHELA is not a "partial assignee" because any assignment would involve a transfer of ownership of the Notes, and Plaintiffs concede (Compl. ¶¶ 23, 45) that the ED has retained *all* ownership of the Notes and has not transferred any ownership interest in the Notes to MOHELA. "An assignment has traditionally been defined in the law of contracts as a transfer by the assignor of all rights in the property assigned to the assignee. It effects an absolute and irrevocable transfer of ownership." *In re Apex Oil Co.*, 975 F.2d 1365, 1369 (8th Cir. 1992). "[T]he elements of a valid assignment are delivery of the subject matter with intent to make an immediate and complete transfer of all right, title, and interest from the assignor to the assignee." *Koch v. Compucredit Corp.*, 543 F.3d 460, 465 (8th Cir. 2008).[3]

Plaintiffs argue that the ED partially assigned the Notes to MOHELA because it allegedly delegated some of its *duties* and obligations under the Notes to MOHELA. Pls.' Opp. at 10. Plaintiffs confuse the concepts of assignment and delegation. "An assignment is the transfer of rights; a delegation is the transfer of duties." *Winegar v. Froerer Corp.*, 813 P.2d 104, 107 (Utah 1991). While "one can assign rights and delegate duties," "one cannot assign duties." *Rsrvs. Dev. LLC v. Crystal Props., LLC*, 986 A.2d 362, 370, n.24 (Del. 2009). Counts 1-3 should be dismissed.

---

[3] In *Heinz v. Driven Auto Sales, LLC*, 603 S.W.3d 890, 897 (Mo. Ct. App. 2020)—the only authority cited by Plaintiffs (Pls. Opp. at 10)—a credit union became the owner of a car loan because of the dealer's assignment of the buyer's retail installment contract to the credit union.

**c. The ED's sovereign immunity bars Plaintiffs' claims against MOHELA under the Notes.**

As explained in MOHELA's opening memorandum, the ED's sovereign immunity as to any liability under the Notes bars Plaintiffs' claims against MOHELA as an alleged partial assignee of the Notes. *See Witz*, 752 F. Supp. 3d at 988-89. Plaintiffs incorrectly contend that "the ED itself has expressly waived sovereign immunity under 20 U.S.C. § 1082(a)(2) of the HEA." Pls.' Opp. at 12. Section 1082(a)(2) provides that the ED's Secretary may "sue and be sued in any court of record of a State having general jurisdiction or in any district court of the United States, and such district courts shall have jurisdiction of *civil actions arising under this part*…." (emphasis added). "Civil actions arising under this part" are civil actions arising *under parts of the HEA*. *Witz*, 752 F. Supp. 3d at 989. Plaintiffs' claims under the Notes are not under the HEA as they state (Pls.' Opp. at 19) that they "do not seek to enforce the Higher Education Act." *Id.* ("§ 1082(a)(2) waives sovereign immunity only with respect to claims 'arising under' the HEA, but Plaintiff's claim is based on an alleged breach of his MPN (a breach of contract claim).").

Plaintiffs argue that MOHELA has waived sovereign immunity under *the Notes* because MOHELA has allegedly waived sovereign immunity under *the Servicing Contracts*. But the Servicing Contracts and the Notes are independent contracts. The Notes are between only Plaintiffs and the ED and were later allegedly "partially assigned" by the ED to MOHELA. Plaintiffs do not, and cannot, point to any language in the Notes waiving sovereign immunity. In addition, the waiver of sovereign immunity provision that the Plaintiffs cite was only in MOHELA's USDS contract which it operated under to mid-2024. This was after MOHELA began servicing all of the Plaintiffs' Notes and after more of MOHELA's complained about conduct allegedly occurred.

Plaintiffs mischaracterize *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 166 (2016), as holding "that federal contractors *or assignees* do not share the Government's unqualified immunity

from liability and litigation." Pls.' Opp. at 11 (emphasis added) (quotation omitted). In *Campbell-Ewald*, the Supreme Court recognized that "[g]overnment contractors obtain certain immunity in connection with work which they do pursuant to their contractual undertakings with the United States." *Id.* at 166. However, the Court held that a federal contractor that sent text messages in violation of the TCPA did not derivatively share in the federal government's immunity from TCPA liability because the contractor violated both federal law and the Government's explicit instructions under the contractor's contract with the federal government. *Id.* at 166-69.

In *Campbell-Ewald*, the Court did not address whether an *assignee* of a federal contract between the federal government and a third party stands in the shoes of the federal government as to the federal government's immunity. The court in *Witz* directly addressed this issue and held that "because the federal government would not have waived sovereign immunity under the HEA if Plaintiff's claims were asserted against it, Plaintiff cannot sue Defendant [a federal loan servicer] as a partial assignee." 752 F. Supp. 3d at 989. The Court, therefore, should dismiss Counts 1-3.

**3. Plaintiffs' statutory claims (Counts 4-10) fail because the state statutes at issue are inapplicable and the claims are barred by state sovereign immunity.**

**a. The FDUTPA (Counts 4-5) does not apply to governmental entities such as MOHELA and does not apply to loan servicing and collection activity.**

Counts 4-5 fail because: (a) the FDUTPA does not apply to Florida governmental entities; and (b) in turn, under *Franchise Tax Bd. of California v. Hyatt*, 578 U.S. 171 (2016) ("*Hyatt II*")[4], the FDUTPA cannot be applied to Missouri governmental entities like MOHELA. *Curcio v. State Dep't of Lottery*, 164 So. 3d 750, 754 (Fla. Dist. Ct. App. 2015); *DBI Servs. LLC v. Shorter*, No.

[4] Plaintiffs erroneously assert that *Hyatt II* requires MOHELA to establish its own sovereign immunity in order to be exempt from the FDUTPA, NYGBL § 349, and the WCPA. Pls.' Opp. at 16. While *Hyatt II* involved Nevada's discrimination against the California Franchise Tax Board as to state sovereign immunity, the governing principle in *Hyatt II* is that the Full Faith and Credit Clause requires each state to treat the governmental entities of other states the same as that state treats its own governmental entities. 576 U.S. at 176-180.

4:16-CV-127MW/CAS, 2017 WL 11629340, at *1 (N.D. Fla. May 1, 2017). Plaintiffs cite no authority applying the FDUTPA to *any* governmental entity. Yet, they argue that "MOHELA's authorities are distinguishable because they concern state-run government agencies performing traditional government services." Pls.' Opp. at 16. But nothing in *Curcio* or *DBI* remotely suggests that a governmental entity's exemption from the FDUTPA depends on whether it performs "traditional governmental services." In *Curcio*, the court held that the Florida Lottery was exempt from the FDUTPA even though operating a lottery is not a "traditional governmental service."

Missouri statutes and the United States Supreme Court recognize that MOHELA's operations—especially its servicing of the *federal government's* student loan programs—are *governmental* functions and services because MOHELA "was created by the State to further a public [i.e., governmental] purpose" and "to fulfill a public [i.e., governmental] function." *Biden v. Nebraska*, 600 U.S. 477, 491-92 (2023); *see also* Mo. Rev. Stat. § 173.360 ("the exercise by the authority of the powers conferred … [on it] … shall be deemed to be the performance of an essential public function"). States do not create entities to perform non-governmental services.

The ED indisputably performs governmental functions and services by administering the federal student loan programs (which are federal benefit programs). By assisting the ED, MOHELA, which is a governmental entity, also performs governmental functions and services.

Counts 4-5 also fail because MOHELA's servicing of loans is not "trade or commerce" for purposes of the FDUTPA: "Servicing and loan collection activity is not 'trade or commerce' as a matter of law." *Genao v. CitiMortgage, Inc.*, No. 16-23111-CIV, 2017 WL 10775439, at *4–5 (S.D. Fla. Feb. 10, 2017), *report and recommendation adopted*, No. 16-23111-CIV, 2017 WL 10775411 (S.D. Fla. Mar. 1, 2017); *see also Jean-Jacques v. Shellpoint Mortg. Servicing*, No. 20-61813-CV, 2021 WL 8894470, at *2 (S.D. Fla. Feb. 3, 2021); *Rodriguez v. Ocwen Fin. Corp.*, No.

17-CV-60574, 2017 WL 3593972, at *6 (S.D. Fla. Aug. 21, 2017); *Benjamin v. CitiMortgage, Inc.*, No. 12-62291-CIV, 2013 WL 1891284, at *5 (S.D. Fla. May 6, 2013); *Dykes v. MOHELA*, Circuit Court of Pinellas County, Florida, Case No. 19-0007394-CI (2020).

Plaintiffs make no real attempt to distinguish these Florida cases, one of which was against MOHELA. Instead, they cite one Florida case that supports MOHELA's position as it held that the FDUTPA does *not* apply to loan collection activities, even if those activities are improper. *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1323 (S.D. Fla. 2014). And Plaintiffs rely on one New Jersey case that ignored the above Florida precedents and briefly discussed "trade or commerce" in a footnote. *Manetta v. Navient Corp.*, No. CV 20-7712(SDW)(LDW), 2021 WL 2886115, at *5, n.5 (D.N.J. July 8, 2021). The Court should dismiss Counts 4-5.

**b. NYGBL § 349 (Counts 6-7) does not apply because MOHELA is a governmental entity and there is no New York intrastate transaction.**

Counts 6-7 fail because: (a) NYGBL § 349 does not apply to New York governmental entities; and (b) in turn, under *Hyatt II*, NYGBL § 349 cannot be applied to Missouri governmental entities like MOHELA. *Walton v. New York State Dep't of Corr. Servs.*, 808 N.Y.S.2d 483, 486 (App. Div. 2006), *aff'd as modified*, 863 N.E.2d 1001 (N.Y. 2007); *Downing v. New York City Hous. Auth.*, 117 N.Y.S.3d 464 (N.Y. Sup. Ct. 2019). Plaintiffs contend that a governmental entity is exempt from NYGBL § 349 only when it performs governmental functions. Plaintiffs cite no authority for this proposition and cite no authority applying NYGBL § 349 to any governmental entity.[5] *Walton* is based on the court's conclusions that "section 349 authorizes a claim for deceptive business practices only against a 'person, firm, corporation or association,'" and

---

[5] Plaintiffs' citation to *Bell v. New York Higher Educ. Assistance Corp.*, 526 N.Y.S.2d 316 (Sup. Ct. 1987), *aff'd*, 144 A.D.2d 1047, 533 N.Y.S.2d 642 (1988), is puzzling because *Bell* did not involve the NYGBL and held that a New York public higher education authority like MOHELA was *not* subject to liability under a New York common law claim for allegedly improperly paying out on its guarantee of the plaintiff's student loan.

governmental entities are not a "person, firm, corporation or association" for purposes of NYGBL § 349. 808 N.Y.S.2d at 486. The *Walton* court's conclusions are not novel because "[i]t has long been the law [in New York] … that the term 'person' generally does not include a governmental entity unless a statutory definition expressly includes that governmental entity within the meaning of the term." *Leonard v. Masterson*, 896 N.Y.S.2d 358, 360 (App. Div. 2010) (citations omitted).

Citing only one case—*Pandit v. Saxon Mortg. Servs., Inc.*, No. 11-CV-3935 JS GRB, 2012 WL 4174888, at *6 (E.D.N.Y. Sept. 17, 2012)—Plaintiffs contend that "courts have routinely permitted statutory claims based on loan servicing activity like that alleged here." Pls.' Opp. at 18. But *Pundit* did not involve a governmental entity. Counts 6-7 should be dismissed.

Counts 6-7 also fail because NYGBL § 349 is limited to *intrastate* transactions and there is no New York intrastate transaction based on MOHELA's loan servicing in Missouri. *See, e.g., Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 324 (2002). NYGBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service *in this state.*" (emphasis added). "*Goshen* relied on legislative history … suggesting the law was meant to apply to 'intrastate transactions in New York.'" *Kaufman v. Sirius XM Radio, Inc.*, 474 F. App'x 5, 8 (2d Cir. 2012) (quoting *Goshen*, 98 N.Y.2d at 325).

Plaintiffs cite no authority for their argument that "the 'transaction' and 'deception' both occurred in New York for the New York subclasses" or that a claim under NYGBL § 349 can be based on their alleged "experiencing" of "MOHELA's servicing failures within" New York. Pls.' Opp. at 18. MOHELA's alleged actions and inactions occurred in Missouri, not New York, as MOHELA has no presence in New York. The Court should dismiss Counts 6-7.

**c. Governmental entities such as MOHELA are not subject to liability under the WCPA (Counts 8-10).**

Counts 8-10 fail because: (a) Washington governmental entities are not subject to liability under the WCPA; and (b) in turn, under *Hyatt II*, Missouri governmental entities like MOHELA cannot be subject to liability under the WCPA. *Washington Nat. Gas Co. v. Pub. Util. Dist. No. 1 of Snohomish Cnty.*, 459 P.2d 633, 635–36 (Wash. 1969); *Haberman v. Washington Pub. Power Supply Sys.*, 744 P.2d 1032, 1071-72 (Wash. 1987), *amended*, 750 P.2d 254 (Wash. 1988); *Witham v. Clallam Cnty. Pub. Hosp. Dist. 2*, No. C09-5410RJB, 2009 WL 3346041, at *5-7 (W.D. Wash. Oct. 15, 2009); *Sauk-Suiattle Indian Tribe v. City of Seattle*, 525 P.3d 238, 241-42 (Wash. Ct. App. 2023); *Leahy v. Edmonds Sch. Dist.*, No. C07-1970 RSM, 2008 WL 11508397, at *8 (W.D. Wash. Nov. 10, 2008); *Ottgen v. Clover Park Tech. Coll.*, 928 P.2d 1119, 1122 (Wash. Ct. App. 1996); *Keenan v. Allan*, 889 F. Supp. 1320, 1383 (E.D. Wash. 1995).

Plaintiffs counter that these myriad cases "are inapposite because MOHELA is neither a municipal corporation nor a political subdivision." Pls.' Opp. at 18. But nothing in the cases cited by MOHELA suggest that they are limited to lower-level governmental entities. *Washington Nat. Gas Co.* is based on the WCPA's limited definition of "person" to include only "natural persons, corporations, trusts, unincorporated associations and partnerships." 459 P.2d at 635-36 (quoting Wash. Rev. Code § 19.86.010). This definition of "person" does not include state-level governmental entities (such as MOHELA), just as it does not include lower-level governmental entities. It would make no sense for Washington to subject state-level governmental entities to the WCPA while exempting only municipal corporations or political subdivisions.

Plaintiffs incorrectly protest that "MOHELA operates as a commercial enterprise rather than a governmental entity." Pls.' Opp. at 18. MOHELA operates as a governmental entity. Mo. Rev. Stat. § 173.360; *Biden*, 600 U.S. at 491, 506; *Dykes v. Missouri Higher Educ. Loan Auth.*,

No. 4:21-CV-00083-RWS, 2021 WL 3206691, at *5-6 (E.D. Mo. July 29, 2021). Even so, "what type of activity the defendant [governmental entity] ha[s] engaged in" is irrelevant to its exemption from the WCPA. *Witham v. Clallam Cnty. Pub. Hosp. Dist. 2*, No. C09-5410RJB, 2009 WL 3346041, at *5-7 (W.D. Wash. Oct. 15, 2009). The Court should dismiss Counts 8-10.

**d. State sovereign immunity bars Plaintiffs' claims under the FDUTPA, the NYGBL, and the WCPA (Counts 4-10).**

Counts 4-10 also fail because MOHELA's sovereign immunity bars Plaintiffs' statutory claims. As Plaintiffs note, *Stacy v. Truman Med. Ctr.*, 836 S.W.2d 911, 919-20 (Mo. 1992), sets forth the test for determining whether a public entity is entitled to sovereign immunity. In *Dykes*, this Court carefully applied the *Stacy* test and concluded that MOHELA was entitled to sovereign immunity. 2021 WL 3206691, at *5-6. Plaintiffs fail to explain how this Court was wrong in *Dykes*.

Plaintiffs argue that "[f]irst, and 'most critical,' MOHELA is not controlled by and directly answerable to one or more public officials, public entities, or the public itself." Pls.' Opp. at 13. The United States Supreme Court previously ruled that Plaintiffs are wrong, concluding that MOHELA "is subject to the State's supervision and control" and "is therefore directly answerable to the State." *Biden*, 600 U.S. at 490–91. Likewise, in *Dykes* this Court found that "the state has significant political and operational control over MOHELA." 2021 WL 3206691, at *5.

Plaintiffs argue that "MOHELA does not perform a service traditionally performed by the government." Pls.' Opp. at 15. Missouri statutes, the United States Supreme Court, and this Court say that Plaintiffs are incorrect. Mo. Rev. Stat. § 173.360; *Biden*, 600 U.S. at 491-92; *Dykes*, 2021 WL 3206691, at *5-6. Even so, Plaintiffs' argument that student loan servicing is not "a service traditionally performed by the government" (Pls.' Opp. at 15) is bizarre given that: (a) the federal government has been making federal student loans since 1958 and "[o]utstanding federal student loans now total $1.6 trillion extended to 43 million borrowers," *Biden*, 600 U.S. at 483; (b) the

federal government could service its own loans; and (c) the federal government has long hired state agencies such as MOHELA to service those loans. Government student loans are as much "a service traditionally performed by the government" as any other government benefit program.

**4. Plaintiffs' claims are improper attempts to enforce the HEA.**

Plaintiffs' claims also fail because they attempt to indirectly enforce the HEA (and the SAVE Rule) through disguised claims for breach of contract and violation of three state statutes, but there is "no private right of action … under the HEA for student borrowers." *Labickas v. Arkansas State Univ.*, 78 F.3d 333, 334 (8th Cir. 1996). While Plaintiffs insist that they "do not seek to enforce the Higher Education Act," Pls.' Opp. at 19, their claims, as pled, are based on their allegation that "MOHELA failed to fulfill its legal obligations as a federal student loan servicer and materially interfered with borrowers' statutory rights under the HEA." Compl. ¶ 145. Thus, their claims improperly attempt to enforce the HEA. *See, e.g., Astra USA, Inc.*, 563 U.S. at 116-22 (plaintiff cannot enforce a federal statutory scheme, for which there is no private right of action, indirectly through a breach of contract claim). The Court should dismiss Counts 1-10.

**Conclusion**

The Court should dismiss all of Plaintiffs' claims in the Complaint with prejudice.

Respectfully submitted,

THOMPSON COBURN LLP

By: */s/ Jeffrey R. Fink*
Jeffrey R. Fink, #44963(MO)
Matthew D. Guletz, #57410(MO)
One U.S. Bank Plaza, Suite 2700
St. Louis, Missouri 63101
(314) 552-6000 (telephone)
(314) 552-7000 (facsimile)
jfink@thompsoncoburn.com
mguletz@thompsoncoburn.com

Attorneys for Defendant MOHELA